S12A0786. PULLEY v. THE STATE.
(729 SE2d 338)

CARLEY, Chief Justice.

After a jury trial, Appellant Reginald Pulley was found guilty of malice murder, theft by taking a motor vehicle, and felony theft by taking. The trial court entered judgments of conviction and sentenced Appellant to life imprisonment for the malice murder charge and a consecutive ten-year sentence for each of the theft charges.*

1. Construed most strongly in support of the verdicts, the evidence shows that on April 9, 2008, Appellant arrived at the residence of Darryl Mason. The two men got into an altercation, and Appellant beat Mason to death with a television. Appellant's hand was cut by a pair of scissors during the fight. After the victim was dead, Appellant stacked the television, microwave, and a stereo speaker on top of the victim's corpse. He then ransacked the apartment and stole two video game consoles, jewelry, movies, and DVDs. He put these items into the victim's car and drove to Water Valley, Mississippi. On April 15, 2008, Appellant was stopped by police in Mississippi while driving the victim's stolen vehicle. Upon searching the car, the police found several DVDs covered in blood.

Appellant was interviewed by law enforcement officials from Water Valley as well as from Gwinnett County, Georgia. In the

---

* The crimes occurred on April 9, 2008, and the grand jury returned the indictment on July 23, 2008. The jury found Appellant guilty on April 16, 2010, and on April 21, 2010, the trial court entered the judgments of conviction and sentences. The motion for new trial was filed on April 20, 2010, amended on January 24, 2011 and June 16, 2011, and denied on November 21, 2011. Appellant filed the notice of appeal on November 23, 2011. The case was docketed in this Court for the April 2012 term and submitted for decision on the briefs.

interview, Appellant admitted to taking the game consoles, jewelry, movies and DVDs. He originally stated that he found the apartment ransacked and the victim injured and decided just to take the items. He later admitted that he had an altercation with the victim, and he claimed that the victim attacked him with scissors. The medical examiner found that the victim died of a sudden blow to the head which caused the brain to swell and the heart to stop. The victim also had other signs of blunt force trauma, including bruising, skin abrasions and broken ribs.

Appellant contends that the evidence was insufficient to authorize the jury to find that the value of the items he stole exceeded $500, and thus his conviction of felony theft by taking should be reduced to a misdemeanor. See OCGA § 16-8-12 (a) (1). With regard to felony theft by taking, the "proper measure of value 'is the fair cash market value either at the time and place of the theft or at any time during the receipt or concealment of the property.' [Cit.]" *Partin v. State*, 302 Ga. App. 589, 590 (692 SE2d 32) (2010). Evidence in the record shows that Appellant stole two PlayStation 2 gaming systems, DVDs, movies, video games, rings, earrings, and two watches from the victim. A witness for the State testified that he was familiar with the game consoles that the victim had and that the value of each system was about $150. According to OCGA § 24-9-66, "[o]ne need not be an expert or dealer in the article in question but may testify as to its value if he has had an opportunity for forming a correct opinion." Moreover, "[t]he weight to be given opinion evidence of market value is a matter for the jury. [Cit.]" *Williams v. State*, 246 Ga. App. 347, 353 (2) (540 SE2d 305) (2000). Additionally, the State tendered into evidence 35 DVDs that Appellant stole from the victim. Although one of the DVDs was marked for sale at $30.00, Appellant admitted that he was selling them out of his trunk for $5.00. Even at that price, the value of the DVDs was $175. Thus, there is evidence that the combined value of the game consoles and the DVDs was $475. This figure does not include the numerous other stolen goods. As all of the goods stolen are properly categorized as items that are widely used and well-known, the testimony regarding their value, " 'coupled with the jury's awareness of the value of "everyday objects," is sufficient to allow the jury to consider such opinion evidence and make reasonable deductions exercising their own knowledge and ideas.' [Cits.]" *Campbell v. State*, 275 Ga. App. 8, 11 (3) (619 SE2d 720) (2005). See also *Roundtree v. State*, 191 Ga. App. 423 (382 SE2d 173) (1989); *Moore v. State*, 171 Ga. App. 911, 912 (2) (321 SE2d 413) (1984).

Therefore, after reviewing the evidence in the light most favorable to the verdicts, we find that the evidence was sufficient for a rational trier of fact to find Appellant guilty beyond a reasonable

doubt of all crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends that the statements he made during interrogation following his arrest were induced by a promise of benefit and thus the trial court erred in finding that his inculpatory statements in his interview with police were voluntary. According to OCGA § 24-3-50, "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or the remotest fear of injury." "Generally, the reward of a lighter sentence for confessing is the 'hope of benefit' to which the statute refers. [Cit.]" *Taylor v. State*, 274 Ga. 269, 273 (2) (553 SE2d 598) (2001). "Unless clearly erroneous, a trial court's factual and credibility determinations related to the admissibility of a confession will be upheld on appeal. [Cit.]" *State v. Roberts*, 273 Ga. 514 (1) (543 SE2d 725) (2001), overruled on other grounds, *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008). "However, ' "(we) independently apply the law to the facts. (Cits.)" (Cit.)' [Cit.]" *Turner v. State*, 287 Ga. 793, 794 (3) (700 SE2d 386) (2010).

Appellant points to several instances in his interview with Water Valley police and a Gwinnett County detective to illustrate that his statements were improperly induced. First, Appellant highlights statements made by the Water Valley police chief who told Appellant that his only chance is to "cut a deal" with the district attorney which could mean "life versus 20 years," that he had helped reduce other people's sentences, that he was trying to do that for him, and that Appellant may be able to get out in a few short years. Without context, these statements by the police chief would seem to constitute the impermissible hope of benefit. However, the " 'trial court determines the admissibility of a defendant's statement under the preponderance of the evidence standard considering the totality of the circumstances.' [Cit.]" *Watkins v. State*, 289 Ga. 359, 363 (4) (711 SE2d 655) (2011).

> [T]he fact "that a law enforcement officer promises something to a person suspected of a crime in exchange for the person's speaking about the crime does not automatically render inadmissible any statement obtained as a result of that promise." [Cit.] Thus, the voluntariness of a statement does not depend solely upon whether it was made in response to promises, rather, the court must determine voluntariness by judging the totality of the circumstances. [Cit.] ... [T]he key inquiry is whether the alleged promise actually induced the statement that [Appellant] seeks to suppress. [Cit.]

*United States v. Prince*, 157 FSupp.2d 316, 328-329 (II) (B) (3) (D. Del. 2001). "[A] promise alone is not sufficient to render a confession involuntary. There must also be a *causal connection* between the police conduct and the confession." (Emphasis in original.) *Blake v. State*, 972 S2d 839, 844 (II) (A) (Fla. 2007). As the record shows, after the statements above were made by the Water Valley police chief, the Gwinnett County detective specifically informed Appellant that he was not there to give him any deals, that he could make no promises with regard to his sentence, and that the district attorney who would be in charge of the case is in Georgia, not Mississippi. Thus, the Gwinnett County detective immediately let Appellant know that any promises made by the Water Valley police chief were not valid. Moreover, Appellant did not make his inculpatory statements until a significant time after the police chief made his assertions that he could help him get a shorter sentence, and during this time, the Gwinnett County detective repeatedly informed Appellant that they could make no promises to him. In fact, before Appellant made any inculpatory statements, he specifically told his interviewers that he did not care if they were going to help him or not, he was going to tell them what happened anyway. This statement by Appellant not only shows that he did not rely on any inducements of a lighter sentence but also reveals that he believed that such promises by the Water Valley police chief were not truthful and were simply a tactic by the police to get him to talk, a belief that Appellant admitted to having during his testimony at trial. Therefore, although the statements made by the police chief may constitute an improper hope of benefit, "they, nevertheless, when viewed in the totality of the circumstances, did not *actually induce* [Appellant's] confession. [Cits.]" (Emphasis in original.) *State v. Brown*, 308 Ga. App. 480, 486 (2) (708 SE2d 63) (2011).

The second alleged promise that Appellant highlights is one made by the Gwinnett County detective. In response to a request by Appellant to be placed in a prison in Mississippi, the detective told him that he cannot make any promises but that he will talk to some folks to see what he could do about getting Appellant in a prison near the Georgia border. However, even if the detective had not specifically told Appellant that he could not make any promises, the only promise that the detective could be accused of making was with regard to the prison location and was not related to any leniency in a charge or a sentence. "A promise not relating to charges or sentences . . . has been held to constitute only a 'collateral benefit,' as that phrase is used in OCGA § 24-3-51, and even if it induces a confession, it does not require the automatic exclusion of that evidence. [Cits.]" *Brown v. State*, 290 Ga. 865, 869 (2) (b) (725 SE2d 320) (2012). See also *Smith*

*v. State,* 269 Ga. App. 133, 140 (3) (603 SE2d 445) (2004); *Patrick v. State,* 169 Ga. App. 302 (1) (312 SE2d 385) (1983). Therefore, the promise to talk to someone about placing Appellant in a certain prison does not amount to a hope of benefit prohibited by OCGA § 24-3-50.

3. Appellant contends that the trial court erred in failing to charge the jury on mutual combat. A "charge on mutual combat generally is proper when there is evidence of a mutual intention or agreement to fight. [Cits.]" *Sinkfield v. State,* 266 Ga. 726, 727 (2) (470 SE2d 649) (1996). According to Appellant's testimony, the victim propositioned him for sex, and he refused. Appellant then turned around, and when he turned back, the victim had a pair of scissors and stabbed him. Appellant then kicked the victim until he dropped the scissors. As he was going to the kitchen to tend to his cut, Appellant saw the victim grab for the scissors again. At this time, Appellant testified, he grabbed the TV and threw it at the victim, who fell and never got back up. Thus, according to Appellant, he only fought the victim after the victim had first attacked him. Appellant also testified that he was only trying to protect himself and that he was not angry at the victim. Therefore, "[u]nder the evidence, if he was not guilty of murder, it was solely because the [killing] was justified, and not because the homicide was" the result of mutual combat. *Pearson v. State,* 278 Ga. 490, 492 (3) (604 SE2d 180) (2004). Therefore, this contention is without merit.

4. Appellant claims that the trial court erred in failing to charge the jury on voluntary manslaughter based on mutual combat. However, in light of our conclusion above that there was no evidence to support a charge of mutual combat, a jury charge on voluntary manslaughter based on mutual combat is not warranted.

5. At trial, Appellant requested jury charges on both self-defense and voluntary manslaughter. The trial court granted his request with respect to the self-defense charge but refused to give a voluntary manslaughter charge. The trial court's refusal was centered on the record's failure to show the requisite provocation to substantiate a voluntary manslaughter charge.

" 'A voluntary manslaughter charge is warranted only if there is evidence that an accused acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.' [Cit.]" *Nelms v. State,* 285 Ga. 718, 722 (4) (a) (681 SE2d 141) (2009).

> "(T)he provocation necessary to support a charge of volun-
> tary manslaughter is markedly different from that which
> will support a self-defense claim. The distinguishing char-
> acteristic between the two claims is whether the accused

was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted." [Cits.]

*Allen v. State*, 290 Ga. 743, 746 (4) (723 SE2d 684) (2012). Appellant testified at trial that he fought the victim and threw a television at him only in response to the victim first coming at him with a pair of scissors. Appellant testified that he was not angry at the victim and was only trying to protect himself. "While this testimony provides some evidence that [A]ppellant may have acted in self-defense, it is not evidence he reacted passionately. [Cits.]" *Allen v. State*, supra at 747 (4). "This Court has repeatedly held that neither fear that someone is going to pull a [weapon] nor fighting prior to a homicide are types of provocation demanding a voluntary manslaughter charge. [Cits.]" *Funes v. State*, 289 Ga. 793, 795 (2) (716 SE2d 183) (2011). See also *Nelms v. State*, supra. "There being no evidence to illustrate the existence of provocation before the [homicide], the trial court did not err by refusing to charge the jury on voluntary manslaughter. [Cit.]" *Nichols v. State*, 275 Ga. 246, 247 (2) (563 SE2d 121) (2002).

6. During the interview between the police and Appellant, the Gwinnett County detective asked Appellant if he had ever been in trouble with the police, and Appellant answered no. The detective further stated that he had checked Appellant's record and that it was clean. Due to this dialogue, Appellant requested a charge on character, but the trial court declined. Appellant contends that the charge was warranted based on the discussion of his clean criminal record. However, "[t]here was no error, as 'merely having no convictions or a clean record is insufficient to invoke good character.' [Cits.]" *Osorto-Aguilera v. State*, 307 Ga. App. 575, 576 (2) (705 SE2d 330) (2011). See also *Godsey v. State*, 271 Ga. App. 663, 664 (610 SE2d 634) (2005); *Etienne v. State*, 219 Ga. App. 95, 96-97 (1) (464 SE2d 396) (1995).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 2, 2012.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, Richard A. Vandever, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.