### S13A0701. BRETT v. THE STATE.
(751 SE2d 59)

BENHAM, Justice.

Appellant David Banks Brett appeals his convictions for the shooting death of Jose Garcia-Castro.[1] In his motion for new trial, appellant alleged his trial counsel rendered ineffective assistance, but the trial court denied the motion, finding appellant had failed to show that counsel's performance was deficient. On appeal, appellant maintains his ineffective assistance claim, arguing that counsel failed to object to inadmissible hearsay and failed to appreciate and "adapt" the defenses available to his client during trial. We affirm for reasons discussed below.

The evidence construed in favor of the verdict showed appellant and the victim were part of a group of mutual friends and drinking buddies who lived in close proximity to each other. On June 9, 2011, appellant became upset when he learned that a dog in the victim's care had died. Three witnesses testified that appellant expressed his anger about the dog's death and made threats about killing the victim on June 9 and on June 10, the day of the shooting. After speaking with the victim on the telephone in the late afternoon of June 10, appellant went to the trailer home of a mutual friend and shot the victim.[2] One witness stated the victim was armed with a knife from the kitchen by

---

[1] The victim was killed on June 10, 2011. On July 12, 2011, a Putnam County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder (aggravated assault), possession of a firearm during the commission of a crime, and carrying a weapon without a license. Appellant was tried before a jury from February 21 through February 23, 2012, with the jury returning a guilty verdict on all counts. On February 23, 2012, appellant was sentenced to life in prison for malice murder, five years to be served consecutively for possession of a firearm and twelve months to be served concurrently for carrying a weapon without a license. The felony murder count was vacated as a matter of law. Appellant timely moved for a new trial on March 16, 2012, and filed an amended motion on September 24, 2012. The trial court held a hearing on the motion for new trial as amended on November 27, 2012, and denied the motion by written order that same day. Appellant filed his notice of appeal on December 17, 2012, and the case was docketed to the April 2013 term of this Court. The case was orally argued on April 1, 2013.

[2] Appellant admitted he had been drinking on the day of the shooting, as well as on the night before the shooting.

the time appellant arrived; however, no one other than appellant witnessed the actual shooting. The two witnesses who were inside the house at the time said they only heard appellant and the victim exchange words and then heard the gunshot. At trial, appellant took the stand and testified that when he arrived at the trailer, he opened the front door and saw the victim with a knife in his hand. Appellant stated the victim came at him slowly at first and then quickened his pace moving the knife up and down with his hand as if he was going to throw the knife to injure appellant. Appellant stated he feared for his life and shot the victim with a gun he said he carried with him for protection. After the shooting, appellant stepped over the victim's body and told the two people inside the trailer to call 911. Appellant then drove to his house where he waited for police to arrive. The victim was transported to the hospital where he died from his injuries. When the police arrived at appellant's home, he told them he had gone to the friend's house to "kick [the victim's] ass," when he arrived the victim had a knife, and he shot the victim with a gun he had brought with him. The sheriff testified that as appellant was being arrested, appellant uttered the words, "That's one Mexican no one will miss." The medical examiner testified the victim was shot in the chest and said the bullet passed through several vital organs including the heart, lung, and liver, causing the victim to die from internal bleeding.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant's sole enumeration of error is that his trial counsel rendered constitutionally ineffective assistance at trial. In order to prevail on such a claim, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

(a) At trial, a witness testified he had heard that appellant carried a gun and would threaten people with it. Trial counsel did not object to this testimony, and so appellant alleges counsel was deficient in his performance and but for counsel's failure to object to this statement as hearsay or as improper prior difficulty evidence, the outcome of the trial would have been different. Pretermitting whether counsel was deficient for failing to object to the testimony, appellant cannot show he was prejudiced. Appellant himself testified that he carried a gun for protection and that he had a gun with him on the night he shot the victim. Appellant also admitted he wanted to fight the victim on the night in question. In light of appellant's admissions, he cannot show that he was prejudiced by counsel's failure to object to the testimony at issue.

(b) At the motion for new trial hearing, trial counsel testified that the theory of defense was justification based on appellant's assertion that the victim came at him with a knife and that appellant feared for his life. Appellant now contends his counsel rendered ineffective assistance by failing to appreciate that a justification defense was not viable in light of testimony showing appellant intended to fight the victim, in light of some evidence showing the victim also agreed to the fight, and in light of the fact that the trial court charged on combat by agreement which is an exception to the justification defense.[3] Appellant argues that with the instruction on combat by agreement, it was not possible for the jury to find justification without disregarding the jury instructions. Appellant further maintains that the only viable defense strategy at the close of evidence would have been instructing the jury on the lesser crime of voluntary manslaughter.

Pretermitting whether counsel was deficient for maintaining the defense of justification throughout the trial, appellant cannot show he was prejudiced thereby. Any evidence of combat by agreement was tangential at best, namely because no one but appellant witnessed the shooting or was privy to the preceding telephone call between appellant and the victim. Appellant testified that during the telephone conversation the victim told him, "I hear you think I need my ass whooped," appellant asked the victim where he was, and the victim said he was at Billy's house and for appellant to "come on down." Another witness testified that after speaking with appellant on the telephone that day, the victim stated he was not going to let appellant kill him and that he would kill appellant. During the time

---

[3] The trial court instructed the jury in part as follows: "A person is not justified in using force if that person initially provokes the use of force as an excuse to inflict bodily harm upon the assailant or was the aggressor or was engaged in combat by agreement. . . ." See also OCGA § 16-3-21 (b) (3).

leading up to this telephone conversation, however, appellant had been making threats on the victim's life to their mutual friends. In addition, appellant was equivocal about his reasons for going over to see the victim after their telephone conversation on the day of the shooting. On the one hand, appellant testified he just wanted to talk to the victim, but he also admitted he told police he had gone over there to "whoop [the victim's] ass." While some of this evidence may have mitigated against appellant's justification defense, it was not necessarily strong evidence of combat by agreement. For example, there was no evidence of a scuffle between appellant and the victim and no evidence of any injury to appellant from a knife wielded by the victim. Considering this evidence, the jury could have reasonably concluded that the victim did not agree to fight appellant, but decided to defend himself against any aggressive behavior by appellant. Indeed, in addition to the combat by agreement exception to justification, the jury was also instructed that a defendant could not prevail on a justification defense if he was the aggressor.

The evidence in this case also does not support a charge on voluntary manslaughter. Georgia's voluntary manslaughter statute, OCGA § 16-5-2, provides as follows at subsection (a):

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

"A voluntary manslaughter charge is warranted only if there is evidence that an accused acted solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." *Pulley v. State*, 291 Ga. 330, 334 (5) (729 SE2d 338) (2012) (citation and punctuation omitted). Here, appellant was admittedly upset at the victim for the death of the dog. However, rather than acting on news of the dog's death suddenly and passionately, appellant sat around for a day drinking and making threats to hurt the victim. The shooting in this case was more akin to an act of revenge for the dog's death than it was akin to an act of sudden, violent and irresistible passion

resulting from a serious provocation. Thus, it is unlikely that counsel's requesting a charge on voluntary manslaughter would have resulted in a conviction for a lesser crime than murder. The trial court did not err when it denied appellant's motion for new trial.

*Judgment affirmed. All the Justices concur, except Melton, J., who concurs in judgment only as to Division 2 (b).*

DECIDED NOVEMBER 4, 2013.

*James C. Bonner, Jr., Kevin A. Anderson, Jimmonique R. S. Rodgers*, for appellant.

*Fredric D. Bright, District Attorney, Stephen A. Bradley, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.