In the Supreme Court of Georgia

Decided:    November 17, 2014

S14A1361.  RUFFIN v. THE STATE.

BENHAM, Justice.

Appellant Antonio Ruffin was, at the time of the criminal conduct involved in this case, an inmate at Hancock State Prison.  He was indicted for malice murder and felony murder in connection with the death of fellow inmate Darrell Blackwelder after a fight in the prison yard.  Appellant was found guilty on both counts and sentenced to life imprisonment without the possibility of parole.[1]

Viewed in the light most favorable to the verdict, the evidence at trial showed that the day before the killing, appellant asked another inmate named

[1] The crime occurred on March 8, 2009, and the Hancock County grand jury returned an indictment on March 24, 2009, charging appellant with malice murder and felony murder (aggravated assault).  Appellant was tried June 29-July 1, 2010, and the jury found him guilty on both counts.  The felony murder conviction was vacated as a matter of law, and the trial court sentenced appellant to life in prison without the possibility of parole.  On July 20, 2010, appellant filed a timely motion for new trial which was later amended.  Following a hearing, the trial court denied the motion for new trial by order dated March 5, 2014.  Appellant filed a timely notice of appeal on March 6, 2014.  The case was docketed in this Court to the September 2014 term for a decision to be made on the briefs.

Ware if he could borrow his leather work gloves. Ware did not see appellant take the gloves, but testified that he loaned them to another inmate who told Ware that he let appellant use the gloves. When Ware returned to his cell after the fight, he found one glove on the floor. Three days after the killing, a nine and one-half inch shank was found in the toilet cavity in Ware's cell, and Ware claimed he did not know how it got there. The testimony of prison personnel and other inmates established that appellant was seen wearing gloves in the yard of the prison on the day the victim was killed.

One of the inmates testified that appellant started pursuing the victim, who was running to get away from appellant. Appellant struck the victim in the face, and one of the guards testified he saw appellant grab the victim by the shoulder and strike him three times in the stomach. The victim fell to the ground. Appellant then repeatedly kicked the victim in the head while the victim unsuccessfully attempted to block the blows. Another inmate described the altercation as "overkill." A guard saw an object in appellant's hand that appeared to be a knife, which he passed to another inmate who could not be identified. After the altercation, appellant walked off the yard with the rest of the inmates while carrying a bloody glove, leaving blood on the gate.

Afterwards, clothing was found in a trash can near appellant's cell, including a pair of shoes with blood stains, socks, a t-shirt, and a fabric name tag that had been ripped off prison clothes bearing defendant's name and inmate number. Slacks were found in the shower with the name tag over the back pocket removed, and they were wet and smelled of a cleaning solution. Appellant testified that he removed his clothing after returning from the yard and that the shoes and clothing found were his. Forensic testing showed the blood found on the slacks, glove, and shoes matched the victim's DNA, and testimony of a forensic expert established the fabric name tag had been ripped off the slacks found in the shower. Along with other injuries, the victim sustained a stab would to the abdomen, which was the cause of death. The victim was a "jail house lawyer," and the State's theory was that appellant was angry with the victim over legal work he was performing on appellant's behalf.

Appellant testified at trial that on the day of the incident, the victim approached him in the yard and charged him with a shank. Appellant fought for his life trying to defend himself, and he testified he had no intention to kill the victim. During the altercation, however, appellant claimed he was able to wrest the shank away from the victim. According to appellant, the victim then fell to

3

the ground and appellant landed on top of him, accidentally driving the shank into the victim.

1. Appellant does not raise the issue of the sufficiency of the evidence to sustain his conviction. Nevertheless, as is this Court's practice, we have reviewed the evidence and considered its legal sufficiency, and conclude that the evidence adduced a trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the crime of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. (a) Appellant argues that the State presented evidence of mutual combat which would permit a jury to find him guilty of the lesser included offense of voluntary manslaughter. Citing *Drake v. State*, 221 Ga. 347 (2) (144 SE2d 519) (1965), appellant thus asserts the trial court was required to charge the jury on voluntary manslaughter and mutual combat even though appellant did not request such a charge, and that its failure to do so requires reversal. In fact, the evidence did not warrant such instructions since appellant testified he acted in self-defense in the fight and did not intend to kill the victim. Further, eyewitnesses to the fight described the appellant as chasing the victim and

4

striking him when he caught up to him, and described the victim's efforts to get away from appellant. Thus, whether the jury believed appellant was merely trying to defend himself from the victim's attack, or that the victim was trying to get away from appellant's attack, no evidence was presented to support a theory of mutual combat. See *Mathis v. State*, 196 Ga. 288 (1) (26 SE2d 606) (1943) (a mutual willingness, readiness, and intent of both parties to fight is essential to establish mutual combat).

(b) Where, as here, trial counsel fails to raise an objection to the trial court's instruction, appellate review is precluded pursuant to OCGA § 17-8-58, unless appellant can show plain error. See *Johnson v. State*, 295 Ga. 615 (2) (759 SE2d 837) (2014). The first element that must be satisfied in order to establish plain error as a result of an alleged failure to instruct the jury on an essential element is that the failure to charge was erroneous. See *Shaw v. State*, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013). As with the offense of murder, intent to kill is an essential element of voluntary manslaughter. OCGA § 16-5-2 (a)[2]; see *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000). Here,

---

[2] OCGA § 16-5-2 (a) provides, in pertinent part: "A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion

5

appellant's own testimony contradicts a necessary element of voluntary manslaughter, in that he claims he did not intend to kill, but was acting in self-defense, and thus he was not entitled to a voluntary manslaughter jury charge. See *Pulley v. State*, 291 Ga. 330 (4) (729 SE2d 338) (2012) (where appellant testified he was acting in self-defense, an instruction on voluntary manslaughter based on mutual combat was not warranted); *Saylors v. State*, 251 Ga. 735, 736 (2) (309 SE2d 796) (1983) (where no witness overheard an argument between the defendant and victim or saw the victim hit defendant, and the defendant testified that he acted not in anger but in self-defense, the trial court did not err in refusing defendant's requested charge on voluntary manslaughter). Accordingly, we reject appellant's assertion that the trial court erred in failing to instruct the jury on either mutual combat or voluntary manslaughter.

3. Appellant asserts the trial court also erred by not polling the jury to verify the verdict was unanimous, even though his counsel did not request the court to do so. After the jury had been deliberating for approximately two and one-half hours, the jury sent out the following question: "Need more clarification. Difference on the Counts 1 and 2. Murder Malice and Felony

in a reasonable person . . . ."

6

Murder. More in depth on these meanings. Where do we draw the line on self-defense? We are having a problem with Count 1 involving self-defense." In response, and without objection from appellant's counsel, the trial court re-charged the jury on malice murder, felony murder, and self-defense. After just over another hour, according to the times recorded in the trial transcript, the jury reported back to the court that it had not yet reached a verdict on one of the counts. The trial court then gave what is commonly referred to as the *Allen* charge,[3] and instructed the jury again, as it charged them in the initial jury instructions, that the verdict must be unanimous. Approximately twenty minutes later the record reflects the jury returned its verdict. Without citing any authority in support, appellant asserts that the question posed and the jury's delay in reaching a verdict demonstrates the jury should have been polled.

"A poll of the jury as to a guilty verdict is not mandated unless requested . . . ." *Coleman v. State*, 256 Ga. 306, 307 (2) (348 SE2d 632) (1986). A defendant waives his right to have the jury polled if it is not asserted right after

---

[3] *Allen v. United States*, 164 U.S. 492 (17 SCt 154, 41 LEd 528) (1896) (holding that while the verdict should represent the opinion of each individual juror, it is proper for the jurors to be instructed that they should listen with deference to the arguments of the other jurors in their efforts to reach a verdict).

the jury has rendered the verdict or sentence. *Burgeson v. State*, 267 Ga. 102 (9) (475 SE2d 580) (1996). The trial court twice instructed the jury that its verdict must be unanimous. "A jury's initial failure to reach a verdict does not indicate that the ultimate verdict is automatically suspect." *Wynn v. State*, 228 Ga. App. 124, 129 (3) (d) (491 SE2d 149) (1997). Here, as in *Wynn*, there was no indication that the verdict was anything less than unanimous after the jury returned a verdict following the *Allen* charge. The trial court did not err when it failed to poll the jury.

4.   (a) Appellant claims his trial counsel provided constitutionally ineffective counsel because he failed to request jury charges on voluntary manslaughter and mutual combat. "To prevail on a claim of ineffective assistance of counsel, an appellant must prove both deficient performance of counsel and prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)." (Citation and punctuation omitted.) *Gill v. State*, 2014 WL 4667535 (Sept. 22, 2014) _____ Ga. _____ (2) (_____ SE2d _____) (2014). Here, no prejudice is shown because, as set forth in Division 2, supra, instructions on mutual combat and voluntary manslaughter were not warranted under the evidence adduced at

8

trial. Trial counsel does not render ineffective assistance for failing to request a charge that would not have been adjusted to the evidence. *Lupoe v. State*, 284 Ga. 576, 580 (3) (g) (669 SE2d 133) (2008). Because the prejudice prong of the *Strickland* test has not been met, we need not examine the other prong of the test. See *Lawson v. State*, 2014 WL 5313932 (Oct. 20, 2014) ___ Ga. ___ (2) (a) (___ SE2d ___) (2014).

(b) Appellant also claims ineffective assistance of counsel as a result of counsel's failure to request a poll of the jury to assure the verdict was unanimous, given that the jury posed a question that demonstrated juror confusion. Georgia courts have "'consistently rejected ineffective assistance claims based on failure to conduct a poll.'" (Citation omitted.) *Marshall v. State*, 285 Ga. 351, 353 (4) (c) (676 SE2d 201) (2009). Certainly, that rule is applicable in this case. With respect to the jury's question, the trial court asked the parties' counsel for suggestions on how to respond and stated that the court would re-charge on malice murder and felony murder. Appellant's counsel asked that the court also re-charge on self-defense, and the trial court agreed to do so. After these additional instructions were given, appellant's counsel stated that he had no exception to the re-charge. Although a criminal defendant is

9

entitled to have the jury polled if a timely request is made (see *Coleman*, supra), as noted in Division 3, supra, the trial court twice instructed the jury that the verdict must be unanimous, and there was no indication in this case that the verdict was anything less than unanimous.  Appellant has failed to show any prejudice as a result of counsel's failure to request a poll of the jury and thus appellant has failed to show constitutionally ineffective assistance of counsel.

Judgment affirmed.  All the Justices concur.