In the Supreme Court of Georgia

Decided: September 14, 2015

S15A0876.  SHOCKLEY v. THE STATE.

BENHAM, Justice.

Appellant Jacques Shockley was convicted of malice murder and other charges arising out of the April 18, 2005 shooting death of Shah Walton.[1] Witness Mona Gantt testified that between 9:15 p.m. and 10:05 p.m. on that evening, she was walking home and saw the victim walking out of a music store. She also saw appellant and his co-indictee Marquez Powell standing near a red car in the store parking lot.  As she knew all three men, she said hello.  She

---

[1] The crimes occurred on April 18, 2005.  On September 9, 2005, a Fulton County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault with a deadly weapon), aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony.  Appellant was tried June 22-25, 2009, and the jury returned a verdict of guilty on all charges. The felony murder conviction is vacated as a matter of law, and the aggravated assault conviction merged with the malice murder conviction for sentencing purposes. The trial court sentenced appellant to life in prison for the malice murder conviction.  The trial court entered a suspended sentence of five years imprisonment for conviction on the possession of a firearm charge, to serve consecutively to the life sentence.  After the trial court entered an order allowing appellant to file an out of time motion for new trial, appellant filed a motion for new trial on April 14, 2010, which was later amended.  Following a hearing, the trial court denied the motion for new trial by order dated August 15, 2013.  Appellant filed a timely notice of appeal, and the case was docketed in this Court to the April 2015 term for a decision to be made on the briefs.

observed the three men get into the car, with the victim in the driver's seat, Powell in the rear seat behind the driver, and appellant in the front passenger seat. The men proceeded to travel in the direction of where the car and the victim's body were found a short time later.

Two trial witnesses testified that on the night of the victim's shooting, they observed a vehicle come to an abrupt stop after striking a utility pole. This occurred at a location just over a half mile from where Ms. Gantt saw the three men getting into a red car, and the vehicle that struck the pole matched the description of the one seen by Ms. Gantt. Immediately after the vehicle struck the pole, the witnesses saw a man exit the rear of the vehicle on the driver's side and pace back and forth for a few seconds until a second man exited the car from the front passenger side. One of the witnesses saw the two men stop at the rear of the car, as if they were trying to decide what to do. Then, the two men ran off together and disappeared into a trail through the woods. The engine of the car continued to rev, as if the driver still had his foot on the gas pedal. According to the witnesses' testimony, between ten to thirty-five minutes after the car struck the pole the witnesses approached the vehicle to investigate. They discovered the victim behind the wheel in the driver's seat obviously dead, with

2

his left pocket turned inside out as if someone had reached into it and pulled it out. One of the witnesses testified he then called 911, and the evidence showed a 911 call came in at 9:54 p.m. [2] A police detective was dispatched to the scene and arrived at approximately 10:00 p.m. Powell's sister testified that between approximately 11:15 p.m. to 11:30 p.m. Powell telephoned her and asked her to come pick him up. When she picked him up, about seven blocks from the place where the victim's body was found, Powell was visibly upset and crying.

The medical examiner testified the victim died from a gunshot wound to the right side of the head from a gun placed a few inches from the head. A gunshot residue technician testified that test samples taken from the victim's hands showed that his hands did not contain any gunshot residue. In the medical examiner's opinion, the victim's death was the result of homicide. From the witness identification and other circumstantial evidence, warrants were issued for both appellant and Powell. Appellant removed himself from the jurisdiction to his father's residence in New Jersey, where he was eventually

---

[2] Although the witnesses did not testify concerning the time at which they saw the car come to an abrupt stop, their testimony supports the conclusion that this occurred between approximately ten to thirty-five minutes before the 9:54 call to 911 was placed, or between approximately 9:20 and 9:45.

apprehended and brought to trial. In response to a request to sever, the appellant was tried separately from Powell, after Powell had already been tried and convicted.[3] Appellant was sentenced to life in prison for his conviction on the malice murder charge brought against him, and he appeals. For the reasons set forth herein, we affirm.

1. Although no direct evidence was presented linking appellant with the victim's shooting death, the circumstantial evidence, when viewed in the light most favorable to the jury verdict, is sufficient to support a finding of guilt beyond a reasonable doubt in satisfaction of the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). We reject appellant's assertion that the facts presented at trial did not exclude every reasonable hypothesis save that of his guilt, as required by OCGA § 24-4-6.[4] Appellant's primary hypothesis presented to the jury during his closing argument was that Ms. Gantt was mistaken in her identification of appellant as one of the men she saw leave with the victim in the red car. During appellant's

---

[3] Powell's conviction was affirmed by this Court. *Powell v. State*, 291 Ga. 743 (733 SE2d 294) (2012).

[4] This case was tried under Georgia's previous Evidence Code. This former Code section is now codified at OCGA § 24-14-6.

attorney's cross-examination of Ms. Gantt, who was fifteen years old at the time of these events, he attempted to impeach her testimony about the exact time she saw the men in the car at the music store, since she initially testified that she passed the music store at about 9:15 on her way home to meet her 10:30 curfew, but in the statement she gave approximately one month after the shooting, she told authorities that she saw the men about 10:05. The credibility of witnesses, however, is a question for the jury. "Appellate courts . . . do not re-weigh evidence or determine the credibility of witnesses on appeal, but rather appellate courts defer to the jury's findings." *Powell v. State*, 297 Ga. 352 (773 SE2d 762) (2015). Nor do appellate courts resolve conflicts in testimony or evidence, as that is the function of the jury. See *Slaton v. State*, 296 Ga. 122, 124 (1) (765 SE2d 332) (2014).

Powell's sister testified that Powell and the victim were best friends and business associates, and that they sold drugs for a living. No evidence, however, was presented linking appellant with the other men's drug activity. Appellant argues that the trial evidence proves nothing more than his association with known drug dealers, and that this was insufficient to support his conviction for events that had the appearance of a drug-related killing. Appellant likens the

facts of this case to those in *Brooks v. State*,[5] in which the appellate court reversed a drug conviction where the circumstantial evidence established little more than the fact that the appellant was observed talking to a known drug dealer and standing within a few feet of a hidden stash of cocaine. Id. at (1). The evidence in this case, however, consists of substantially more than simply being seen in the presence of the victim and his drug-dealing associate on the evening of the victim's shooting. The short interval between the approximate time appellant was seen entering the passenger side of the car driven by the victim, which was also occupied by his co-indictee, and the approximate time (a) two men were seen exiting and running from a car of the same description; (b) which had crashed into a pole only a short distance away from where they had previously been seen; (c) which car was also driven by the victim; and (d) in which car the victim was found shot in the head at close range, is sufficient to permit a rational jury to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.

Though the evidence did not conclusively establish which of the two co-indictees actually shot the victim, the jury was instructed as to the standard for

---

[5] 206 Ga. App. 485 (425 SE2d 911) (1992).

6

convicting a defendant as a party to a crime. Appellant asserts the evidence does not support his conviction as a party to the crimes for which he was charged because no evidence was presented that appellant was "concerned in the commission" of those crimes, as required by OCGA § 16-2-20 (b) (1) - (4). Specifically, appellant asserts no evidence was presented to establish a common criminal intent with his co-indictee. But this Court has often held that a jury is authorized to find a defendant guilty as party to a crime from evidence of the defendant's presence, companionship, and conduct before and after a crime. See *State v. Jackson*, 294 Ga. 9, 11 (748 SE2d 902) (2013), and cases cited therein. Evidence supporting the conclusion that appellant was in the car at the time of the shooting, that he fled the scene with his co-indictee, and that he later fled the jurisdiction was sufficient for a rational trier of fact to find appellant guilty as a party to the crimes.

2. During deliberations, the jury presented the trial court with the following written question: "Can/does malice become implied based on the designation of the parties to a crime?" The trial judge consulted with the prosecuting attorney and appellant's trial counsel and indicated he was inclined, in response, to refer the jury to the charges given with respect to when a person

7

may be found guilty as a party to a crime. Appellant's trial counsel responded that the instructions speak for themselves, and objected to any response that emphasized any particular charges, because he believed the judge and attorneys were merely speculating about what the jury was really concerned with. After a brief discussion, the trial court responded in writing to the jury by instructing the jury to refer to a specific set of numbered charges in the charge packet; those charges corresponded with the full statement of the law regarding conviction as a party to a crime, all of which were taken from the Suggested Pattern Jury Instructions. Appellant now asserts the jury's question was ambiguous as to which counts of the indictment the jury's question referred to, and that the trial court erred by failing to recall the jury and gain clarification about its question rather than merely guessing at what the jury meant by it. Because appellant did not specifically request the trial court to seek further clarification from the jury about its question before the court responded to it, appellant failed to preserve the issue, and appellate review would be available only if the trial court's response to the jury question constituted plain error affecting the substantial rights of the parties. OCGA § 17-8-58 (b); *Aikens v. State*, 297 Ga. 229 (2) (773 SE2d 229) (2015); *Ruffin v. State*, 296 Ga. 262, 264 (2) (b) (765 SE2d 913)

(2014). In this case, as in *Aikens*, the trial court's initial charges to the jury (here, the charges relating to conviction as a party to a crime), were correct, and appellant has failed to show any reason to believe that the trial court's response to the jury's question "affected his 'substantial rights' in any way." *Aikens*, supra.

3. Finally, appellant asserts ineffective assistance of trial counsel with respect to counsel's failure to call appellant's mother or other family members as alibi witnesses. At the motion for new trial hearing, appellant's mother testified that she had spoken with trial counsel about what her testimony would be concerning her son's whereabouts on the night in question. She also testified that the reason for appellant's trip out of state to visit his father after the shooting was not made to avoid arrest. Appellant's mother expected to be called as a witness but, instead, she was neither called as a witness nor notified that the trial had commenced. Trial counsel, however, testified that he decided not to call her as a witness due to the ambiguity and uncertainty about the time frame in which she could attest her son was at home on the night in question. The mother's testimony at the motion for new trial hearing established that the family's home was only a block and a half from the music store where Ms. Gantt

9

testified she saw appellant, his co-indictee, and the victim. She testified she either saw or heard her son in the house at about 8:30 p.m., and she believed he was present up to the time he came by her bedroom, at about 10:00 p.m., to tell her he was leaving the house, but her testimony established that she was in her bedroom watching television for most of that time. Consequently, her testimony did not conclusively establish that appellant was at his home during that period of time. Further, trial counsel testified he was concerned that jurors would not give much credit to the mother's testimony given her familial ties to appellant.

A claim of ineffective assistance of counsel requires a showing of both deficient performance of counsel and prejudice from that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674 (1984). A decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances. *Jones v. State*, 296 Ga. 561, 567 (4) (769 SE2d 307) (2015). "With respect to the issue of performance, when reviewing ineffective assistance of counsel claims, this Court applies a strong presumption that counsel's performance falls within the wide range of

reasonable professional assistance." *Gill v. State*, 295 Ga. 705, 708 (2) (763 SE2d 719) (2014). Here, trial counsel's testimony shows his election not to call appellant's mother was considered, informed, and reasonable, and this Court cannot say that this decision was outside the range of reasonable professional assistance. Thus, appellant has failed to establish his counsel's performance was deficient, one of the essential prongs of the standard for proving ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.