Blackwell, Justice, dissenting.
As the majority correctly explains, the statements by the trial judge about her propensity to impose especially harsh sentences crossed the line drawn by Uniform Superior Court Rule 33.5 (A), insofar as her statements impliedly threatened Jimmy Carlton Winfrey with a harsher sentence if he went to trial and were found guilty. Judicial commentary of this sort certainly could render a subsequent guilty plea involuntary, but only if it actually induces the accused to enter his plea. The record in this case does not establish that the judicial commentary in question induced Winfrey to enter his plea, and I cannot, therefore, go along with the majority and conclude that his plea was involuntary. I respectfully dissent.
*619 The majority concedes that a violation of Rule 33.5 (A) does not inevitably render a subsequent plea involuntary, and that most certainly is correct. As the United States Supreme Court has explained, improper threats may render a plea involuntary, but only to the extent that the plea is induced by the threats:
A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).
Brady v. United States, 397 U.S. 742, 755 (II), 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (citation and punctuation omitted, emphasis added). See also Machibroda v. United States, 368 U.S. 487, 493 (II), 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").[5]
**103 As the record presently exists, I cannot conclude that the improper comments of the judge, in fact, induced Winfrey to enter his plea.
To be sure, Winfrey entered his plea about an hour-and-a-half after the judge made the improper comments, and that fact is some evidence that the plea was induced by the comments. But the record also shows that Winfrey, his counsel, and the prosecuting attorneys had been in plea discussions prior to the improper comments, and although Winfrey had rejected earlier plea offers, the record indicates that his rejection of those offers was driven in significant part by concerns about parole considerations, concerns that were addressed, at least to some extent, by the negotiated plea that Winfrey finally entered. The precise terms of the earlier offers that Winfrey had rejected are unclear on the existing record, but the record suggests that the plea that he eventually negotiated might have been substantially more favorable than those earlier offers.[6] Winfrey was represented by two seasoned criminal defense lawyers, neither of whom raised any objection when Winfrey entered his plea. At that time, Winfrey represented to the trial court that he was "satisfied with the services of [his] attorneys," and his plea was "made upon [his] own free decision after discussing it with [his] attorneys." Also in his plea colloquy, he confirmed that no one had "made any promise or threat to get [him] to plead guilty," his awareness that it was his decision whether to "plead guilty or not guilty," and his understanding that, if he proceeded to trial, "[he] would be presumed innocent, and have the right to make the State prove [his] guilt beyond a reasonable doubt as to every essential element of the crime."[7] "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (II), 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). See also United States v. Stewart, 198 F.3d 984, 987 (7th Cir. 1999) ("Entry of a plea is not some empty ceremony, and statements made to a [ ] judge in open court are not trifles that defendants may elect to disregard."). These circumstances and representations support the **104 finding of the trial court *620 that the plea was voluntary, and as the record stands now, it shows only a possibility that the plea might have been induced by the improper comments of the judge.
That possibility is reason to afford Winfrey an opportunity to present evidence of actual inducement, notwithstanding that such evidence would contradict his "solemn declarations" in the plea colloquy. See Fontaine v. United States, 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). But Winfrey filed no motion to withdraw his plea, which would have given him an opportunity to expand the record. Consequently, we are left with uncertainty about whether the plea that he eventually negotiated was substantially more favorable than the offers that he previously had rejected, we know nothing about what he discussed with his counsel in the hour-and-a-half between the improper commentary by the judge and the entry of the plea, and we do not have any explanation of the thinking that led Winfrey to enter his plea. For all we know, Winfrey was not influenced in any way by the comments of the judge, his lawyers disabused him of any concerns raised by those comments, he had been predisposed to enter a plea if a sufficiently favorable plea could be negotiated, and the plea that he ultimately negotiated met his preexisting requirements. This incomplete record has convinced the majority that the plea was involuntary.[8] I am not so sure.
I am authorized to state that Justice Peterson joins this dissent.

Cf. Colorado v. Connelly, 479 U.S. 157, 164 (II), 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (with respect to allegedly involuntary confession, holding that, "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law" (emphasis added) ); Pulley v. State, 291 Ga. 330, 332 (2), 729 S.E.2d 338 (2012) ("[T]he voluntariness of a statement does not depend solely upon whether it was made in response to promises .... The key inquiry is whether the alleged promise actually induced the statement that [the defendant] seeks to suppress." (Citation and punctuation omitted, emphasis added) ).

The statements of the prosecuting attorney at the plea hearing indicate that the plea eventually negotiated by Winfrey cut the years of incarceration by half from the earlier offers for Winfrey to plead to violations of the Street Gang Terrorism Prevention Act. The statements of Winfrey's counsel at the same hearing suggest otherwise, and the record is, therefore, ambiguous on this point.

The record also includes a written plea questionnaire, on which Winfrey made similar and consistent representations about the voluntariness of his plea.

Although the majority says that a Rule 33.5 (A) violation does not always render a subsequent plea involuntary, its analysis and conclusion suggest otherwise. Indeed, if the majority meant what it says, one surely would expect the majority to address voluntariness distinctly before concluding that the plea in this case was involuntary. But instead, the majority says nothing meaningful about inducement (an essential component of a claim that a plea is involuntary), and having found that the judge's commentary violated Rule 33.5 (A), the majority jumps straight to the conclusion that the commentary itself, without more, shows the plea to be involuntary.