**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT.  ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 30, 2021**

# In the Court of Appeals of Georgia

A21A0060. HOLLIS v. THE STATE.

MCFADDEN, Chief Judge.

After a jury trial, Justin Hollis was convicted of armed robbery, aggravated assault, and possession of a firearm during the commission of a felony. He appeals the denial of his motion for new trial, raising six claims of error. Hollis argues: (1) that the evidence does not support the convictions, but we hold that there was sufficient evidence from which a rational trier of fact could find guilt beyond a reasonable doubt; (2) that the trial court erred by denying his motion to suppress the statement he gave in the absence of his attorney, but the record shows that Hollis did not invoke his right to counsel when he gave that statement; (3) that the trial court erred by admitting the victim's identification of Hollis because the identification came from Facebook, not a photographic lineup, but the record shows that the victim

identified Hollis in a photographic lineup; (4) that the trial court erred by allowing the state to introduce character evidence, but Facebook photographs of Hollis with a gun did not improperly implicate his character; (5) that the trial court erred by qualifying a witness as an expert on cell phone tower data analysis, but the trial court did not abuse his discretion; (6) and that trial counsel was ineffective, but Hollis has failed to show both deficient performance and prejudice. So we affirm.

1. *Sufficiency of the evidence*.

Viewed in the light most favorable to the verdict, see *Virger v. State*, 305 Ga. 281, 286 (2) (824 SE2d 346) (2019), the evidence shows that the victim, a graduate student at Auburn University, inquired about purchasing a gaming console advertised for sale on Hollis's Facebook account. The victim and Hollis communicated through Facebook and over the phone, and they arranged to meet.

The victim drove 45 minutes to Columbus to meet Hollis in a Walmart parking lot, communicating with him via his cellular telephone the entire time until the car in which Hollis was a passenger pulled up. Hollis, who was seated in the back of the car, showed the victim a gaming console. At Hollis's invitation, the victim got into the car to inspect the gaming console more closely. Someone locked the car doors. Hollis and another passenger pulled out handguns, Hollis pointed his gun at the victim's head,

and then Hollis began hitting the victim with the butt of the gun. Hollis demanded that the victim give him everything that he had. The occupants of the car took $250 from the victim's pocket, his wallet containing credit cards and a blank check, and his cell phone. They ejected the victim from the moving car and drove off. Hollis blocked the victim from Hollis's Facebook account almost immediately after the robbery.

This evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Hollis was guilty of the crimes charged against him. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (A) (99 SCt 2781, 61 LE2d 560) (1979).

2. *The admission of Hollis's custodial statement.*

Hollis argues that the trial court erred by denying his motion to suppress his custodial statement since he gave the statement without the presence of his retained counsel, who had filed an entry of appearance in the case. We disagree because Hollis gave his statement after he waived his right to have counsel present.

The detective who conducted Hollis's interview testified that he read Hollis an advice of rights and waiver of rights form, which included the right to have a lawyer and to have that lawyer present. The detective testified that after Hollis said that he understood his rights, Hollis initialed and signed the waiver of rights form, which the court admitted into evidence. This evidence supports the trial court's finding that

3

Hollis voluntarily gave his statement after being advised fully of his rights and waiving them in writing, even though he was actually represented by counsel at the time of his custodial interview "[A] defendant who is represented by counsel and who has not previously invoked his right to counsel may waive his right to have counsel present at a custodial interrogation after being advised of that right, even if he is not the one to initiate the communication."

Even though Hollis "was actually represented by counsel at the time of his . . . custodial interview, the record demonstrates that he waived in writing his right to have counsel present at the interview and he never explicitly invoked his right to counsel thereafter." *Taylor v. State*, 304 Ga. 41, 48 (4) (816 SE2d 17) (2018). So the trial court did not err in ruling that Hollis's custodial statement was admissible. See *Montejo v. Louisiana*, 556 U.S. 778, 789 (III) (B) (129 SCt 2079, 173 LE2d 955) (2009) (rejecting defendant's assertion "that no represented defendant can ever be approached by the [s]tate and asked to consent to interrogation") (emphasis omitted). Cf. *State v. Sammons*, 283 Ga. 364, 366 (2) (659 SE2d 598) (2008) ("Any police-initiated questioning *after* the invocation of counsel renders any purported waiver by the accused invalid.") (Emphasis supplied.)

3. *The victim identified Hollis from a photographic lineup.*

4

Hollis claims that the trial court erred by denying his motion to suppress the victim's identification of him from a pretrial photographic lineup. But he supplies no argument in support of this claim and we see no error in the lineup's admission. What Hollis actually argues is that the victim's identification of Hollis was inadmissible because the victim identified Hollis through photographs from Facebook, not from a photographic lineup. This argument is belied by the record. The trial transcript shows that the victim did identify Hollis from a photographic lineup and that the trial court admitted the photographic lineup itself. Hollis has not shown error.

4. *A photo from Hollis's Facebook account did not improperly place his character in issue*.

Hollis argues that the trial court erred by allowing the state to introduce a photograph from his Facebook account showing him holding a gun because the photograph improperly placed his character into issue. We hold that the trial court did not err.

The victim testified that the gun shown in the photograph was similar to the gun Hollis used to strike him. As a result of this testimony,

> [t]he photograph was relevant to show that [Hollis], at some point, possessed the type of gun used in the crimes at issue. The probative

value of this evidence was not substantially outweighed by its prejudice, as even evidence that a defendant owned and frequently carried a pistol does not impute to him generally bad character. The trial court did not abuse its discretion by permitting the jury to view evidence that [Hollis], at one point, possessed a gun.

*Lyons v. State*, 309 Ga. 15, 23 (5) (843 SE2d 825) (2020) (citation and punctuation omitted).

5. *The trial court did not err in qualifying a state's witness as an expert on cell phone tower data analysis.*

Hollis argues that the trial court abused his discretion in qualifying the lead detective as an expert on cell phone tower data analysis. Hollis has not shown that the trial court abused his broad discretion.

When the detective testified on direct examination, the state tendered him as an expert on cell phone data analysis and the trial court qualified him as an expert in that field. On cross-examination, defense counsel questioned the detective about certain phone records and the detective responded that he was "not a cell phone tower analysis expert." Defense counsel sought clarification, asking the detective specifically whether cell phone tower analysis fell within his expertise. The detective responded that he did "not have expertise in cell phone tower analysis."

6

In the presentation of his defense, Hollis called an expert witness on cell phone tower data analysis, who testified that cell phone tower records indicated that Hollis was not present at the robbery. Then in its case on rebuttal, the state recalled the detective and questioned him about cell phone tower data analysis. Defense counsel objected on the ground that the subject was beyond the scope of the detective's expertise. The trial court allowed counsel to again voir dire the detective, who testified that he had taken a one-week course in cell phone tower data analysis, that he analyzes cell phone tower data "on a fairly consistent basis," almost daily, because it is part of his job, and that he has used cell phone tower data analysis in other cases. He explained that when he previously testified that he did "not have expertise in cell phone tower analysis," he meant that the court had not recognized him as an expert in that field. The court qualified the detective as an expert in cell phone tower data analysis.

Hollis argues that given the detective's testimony that he was not an expert in cell phone tower data analysis, the trial court erred in qualifying him as one. Generally, to qualify as an expert witness, "all that is required is that a person must have been educated in a particular skill or profession; his special knowledge may be derived from experience as well as study." *Davis v. State*, 301 Ga. 397, 406-407 (6)

7

(d) (801 SE2d 897) (2017) (citation and punctuation omitted). See generally OCGA § 24-7-707. And we will not disturb a trial court's decision to accept or reject the qualifications of the expert unless the court abuses its broad discretion. *Davis*, 301 Ga. at 407 (6) (d). Given the detective's explanation of his training and experience — as well as his explanation of his previous testimony that he was not an expert in cell phone tower data analysis — the trial court did not abuse his discretion in qualifying the detective as an expert in cell phone tower data analysis.

6. *Hollis has not shown that he received ineffective assistance of counsel.*

Hollis claims that trial counsel was ineffective in two respects: because he chose not to call Hollis's alibi witness and because he withdrew his requested jury instruction on alibi. But Hollis has not shown both deficient performance and prejudice for either claim.

To prevail on his claims of ineffective assistance of counsel, Hollis must show that trial counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (III) (B) (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010). To show deficient performance, Hollis "must overcome the strong

presumption that trial counsel's performance was adequate and that his decisions were made in the exercise of reasonable professional judgment." *Winters v. State*, 303 Ga. 127, 130 (II) (810 SE2d 496) (2018) (citations and punctuation omitted). If Hollis fails to meet his burden of proving either prong of the *Strickland* test, we do not have to examine the other prong. *Lawrence v. State*, 286 Ga. 533, 533-534 (2) (690 SE2d 801) (2010).

(a) *Trial counsel's decision not to call the potential alibi witness*.

Hollis argues that trial counsel was ineffective because he did not call his alibi witness, his grandmother. He has not shown that trial counsel performed deficiently in failing to call this witness.

Hollis's grandmother testified at the hearing on the motion for new trial. She testified that Hollis, who lived with her, stayed at home with her the entire night of the robbery. She testified that she watched television and then went into her room that evening. She testified that Hollis was in his room and she would have heard if he left. She did not testify, however, that she actually saw Hollis.

Trial counsel testified that he did interview the grandmother but did not exactly recall why he did not call the grandmother to testify, although it was most likely a strategic decision. Trial counsel did present evidence — expert testimony about

9

locations determined from cell phone tower data and IP addresses — to support Hollis's defense that he was at home at the time of the crime. And he argued that defense in closing.

Unless it is so unreasonable that no competent attorney would have made the same decision,

> [a] decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances. With respect to the issue of performance, when reviewing ineffective assistance of counsel claims, this [c]ourt applies a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.

*Shockley v. State*, 297 Ga. 661, 665-666 (3) (777 SE2d 245) (2015) (citations and punctuation omitted) (defendant did not establish deficient performance where lawyer failed to call defendant's mother as an alibi witness because mother believed defendant was present at the house, but she was in her bedroom so her testimony did not establish that fact, she was ambiguous about time frames, and jury was unlikely to give her testimony much credit because of her relationship with the defendant). We cannot say that trial counsel's decision not to call Hollis's grandmother as a witness

"was outside the range of reasonable professional assistance. Thus, [Hollis] has failed to establish his counsel's performance was deficient, one of the essential prongs of the standard for proving ineffective assistance of counsel." Id. at 666 (3).

(b) *Trial counsel's decision to withdraw his request to charge on alibi.*

As for counsel's decision to withdraw his request for a jury instruction on alibi, Hollis has not shown prejudice. Because

> the true effect of an alibi defense is to traverse the state's proof that the defendant committed the crime, [a] charge that the burden is on the state to prove that the defendant committed the crime beyond a reasonable doubt itself necessarily covers the question of whether the evidence of alibi was sufficient to create a reasonable doubt.

*Rivers v. State*, 250 Ga. 288, 300 (8) (298 SE2d 10) (1982). Here, the trial court instructed the jury on the state's burden of proving the elements of the crimes beyond a reasonable doubt, the presumption of innocence, the state's burden of disproving defenses raised by the evidence beyond a reasonable doubt, and the assessment of the credibility of witnesses and expert witnesses in particular. These instructions covered the question of whether Hollis's proof of alibi was sufficient to create reasonable doubt. See *Scott v. State*, 290 Ga. 883, 886 (4) (725 SE2d 305) (2012).

11

Because Hollis has not demonstrated prejudice, this claim of ineffective assistance of counsel fails.

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*