S11A0752, S11A0914. MILLER v. THE STATE (two cases).
(717 SE2d 179)

THOMPSON, Justice.

Appellants Tonya and Jabaris Miller (mother and son) were convicted of malice murder, arson, and other related offenses in connection with the death of Cheryl Miranda.[1] Tonya appeals in Case No. S11A0752; Jabaris appeals in Case No. S11A0914.

*Case Nos. S11A0752 and S11A0914*

Viewed in a light most favorable to the verdict, the evidence shows that Miranda and Tonya had been roommates in Tampa, Florida and were involved in a turbulent relationship for some time prior to Miranda's death. In May 2004, Miranda obtained two temporary protective injunctions against Tonya in Florida and Tonya was arrested for violating one of them.

---

[1] On June 17, 2005, a Fulton County grand jury returned a multi-count indictment jointly charging Tonya and Jabaris Miller with malice murder, felony murder while in the commission of an aggravated assault, aggravated assault, arson in the first degree, arson in the second degree, and concealing the death of another. The first three crimes were alleged to have occurred between February 27, 2005 and March 4, 2005. The remaining crimes occurred on March 4, 2005. A joint trial commenced on February 6, 2008. On February 22, 2008, the jury returned a verdict acquitting Tonya of both arson charges and finding her guilty of all remaining counts and acquitting Jabaris of arson in the second degree and finding him guilty of all remaining counts. Both appellants were sentenced on February 25, 2008. Jabaris received a life sentence for malice murder, plus a consecutive 20-year sentence for arson and a concurrent 10-year sentence for concealing the death of another. Tonya was sentenced to life imprisonment for malice murder, plus a consecutive 10-year sentence for concealing the death of another. The remaining counts were either merged or vacated by operation of law under *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Jabaris filed a motion for new trial on February 25, 2008, which was amended on November 19, 2009. Tonya filed a motion for new trial on March 8, 2008, which was amended on November 5, 2009. The motions were denied in a joint order of the trial court on November 19, 2010. Notices of appeal were filed for both appellants on December 3, 2010. The appeals were docketed to the April 2011 term of this Court and were submitted for a decision on briefs on March 28, 2011 (as to Tonya), and April 25, 2011 (as to Jabaris).

In January 2005, Miranda contacted a close family friend and asked the friend to meet her at a local nightclub. When the friend arrived she observed that Miranda's face was bruised and bloody, her eyeglasses were broken, and a front tooth had been knocked out; Miranda informed her friend that she had gotten into a fight with "Tonya."

Miranda was last seen alive on February 27, 2005. On February 28, 2005, cell phone towers tracked Miranda's cell phone as it traveled from Tampa to Atlanta. During that time, Jabaris placed dozens of calls from Miranda's cell phone to his friends and relatives in Georgia. One such call was made to a cousin explaining that he had run out of gas in Fort Valley and asking her to bring money to him. During this conversation, the cousin heard Tonya's voice in the background reiterating the request for gas money. On March 1, 2005, appellants unexpectedly appeared at an apartment on Welcome All Road in Atlanta, rented by some of their relatives. Jabaris drove there in Miranda's white Nissan pickup truck which remained in the apartment parking lot for the next four days with the bed of the truck covered.[2] He told a cousin that he had gotten into an argument with a woman in Florida but did not want to elaborate.

On the morning of March 4, 2005, the Nissan truck was found engulfed in flames off the side of a road a few hundred yards from the same apartment complex. An accelerant had been used to start the fire. Responders found Miranda's body in the bed of the burning truck. She had been bound at the wrists, choked, stabbed, and beaten to death, then doused with charcoal lighter fluid and set on fire. Forensic evidence established that death had occurred two to four days earlier.

Jabaris was arrested shortly thereafter at the home of another relative, Tamela Givan. Givan identified certain luggage that belonged to appellants. Those bags were searched pursuant to a warrant; they contained Miranda's cell phone and credit cards, several pawn tickets issued to Miranda, and "hundreds" of documents in Miranda's name.

Jabaris was taken to the police department where *Miranda* warnings were administered and a waiver was executed. He gave a lengthy custodial statement in which he admitted taking possession of Miranda's truck in Tampa and, accompanied by Tonya, driving the truck to his aunt's apartment on Welcome All Road in Atlanta. He also claimed that after a couple of days he discovered Miranda's body in the bed of the truck in the apartment parking lot, and that he got

---

[2] It was not established whether Tonya and Jabaris arrived at the apartment at the same time or in the same vehicle. There is, however, evidence that they both arrived on the same day.

"rid of it" by dousing the truck with lighter fluid and setting it on fire.

Tonya was arrested several days later at Givan's home. She too received *Miranda* warnings and executed a waiver. In a custodial statement, she told the officers that she and Miranda had been roommates and that Miranda had locked her out of the apartment and had pawned her furniture and other personal belongings. An ornamental knife and nunchucks, which Miranda had displayed on her mantle in Tampa, were seized from appellants' bag. Forensic evidence established that these could have been used to inflict the fatal injuries.

1. When construed most strongly in support of the verdicts, the evidence was sufficient to enable a rational trier of fact to find both appellants guilty beyond a reasonable doubt of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Both appellants assert that their Sixth Amendment rights to confront the witnesses against them were violated when the trial court allowed Raul Palomino, a Florida Circuit Court judge, to testify to the contents of three petitions for temporary protective injunctions that were filed in the Florida court in which he presided. The first two petitions were filed by Miranda in May 2004 and sought protective injunctions against Tonya. The third petition was filed by Tonya in June 2004 and sought an injunction against Miranda.[3]

At trial, the State provided Judge Palomino with copies of Miranda's two petitions, and he was asked to read the allegations into evidence. Trial counsel for both appellants raised continuing objections to the contents of the petitions on grounds that the testimony violated their rights to confrontation, and the statements constituted inadmissible hearsay. The objections were overruled, and Miranda's sworn allegations were read into evidence. These included Miranda's claims that Tonya "threatens to kill me, threatens to stab me, beat me, [and] I'm in fear, great fear of my life." Miranda also alleged that Tonya had "broken into [Miranda's apartment] through back sliding glass doors," that she "came at [her] striking [her] in the back," and that Tonya is known to possess "knives, swords, guns, five stars."

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U. S. Const., Amend. VI. This right is binding against the states under the

---

[3] All three petitions were subsequently dismissed when the petitioner in each case failed to appear at the scheduled hearings.

Fourteenth Amendment. *Pointer v. Texas*, 380 U. S. 400 (85 SC 1065, 13 LE2d 923) (1965). The United States Supreme Court reexamined the Confrontation Clause in *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), and declared that statements which are testimonial in nature and made by an unavailable declarant are inadmissible in criminal proceedings against a defendant who has had no prior opportunity to cross-examine that declarant. Id., 541 U. S. at 68. *Crawford* defined "[t]estimony . . . [as] typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." (Citations and punctuation omitted.) Id., 541 U. S. at 51. The Court identified a "core class of 'testimonial' statements, . . . [to include] ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." Id. Our cases have followed suit. See, e.g., *Pitts v. State*, 280 Ga. 288 (627 SE2d 17) (2006) (differentiating between "testimonial" 911 calls, in which the caller seeks to establish evidentiary facts that an objective person might foresee being used in a future prosecution from "non-testimonial" calls made to avert a crime in progress or in seeking help from immediate danger).

In the present case, Miranda's verified petitions were read into evidence by Judge Palomino to show the violent history between Tonya and Miranda, with the intention of "establish[ing] or prov-[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U. S. 813, 822 (126 SC 2266, 165 LE2d 224) (2006). See also *Michigan v. Bryant*, ___ U. S. ___ (131 SC 1143, 179 LE2d 93) (2011). Thus, the sworn statements were testimonial in nature. *Davis*, supra, 547 U. S. at 822. Because Miranda was an unavailable declarant, and because Tonya had no opportunity to cross-examine her, the trial court violated Tonya's Sixth Amendment right to confront the witnesses against her by allowing the statements to be read into evidence. *Brown v. State*, 288 Ga. 404 (3) (703 SE2d 624) (2010) (victim's sworn statement in verified petition seeking temporary protective order against defendant was testimonial for purposes of defendant's right to confrontation).

> While the error is one of constitutional magnitude, it can be harmless error if the State can prove beyond a reasonable doubt that the error did not contribute to the verdict, such as when the evidence at issue is cumulative of other properly-admitted evidence or when the evidence against the defendant is overwhelming.

Id. at 408.

(a) As for Tonya, the properly admitted evidence established that Miranda had received the temporary injunctions she requested and that Tonya had been notified of the injunctions and arrested at one point for violating one of them. The evidence also showed that approximately eight months after the injunction petitions were filed, an altercation occurred between Tonya and Miranda at a local night club and that Miranda lost a tooth as a result of that encounter. "[T]he true test as to whether evidence is cumulative depends not only on whether it tends to establish the same fact, but it may depend on whether the new evidence is of the same or different grade." *Johnson v. State*, 196 Ga. 806 (27 SE2d 749) (1943). Here, the contents of the sworn affidavits supporting Miranda's petitions are similar to other properly admitted evidence — Miranda was sufficiently afraid of Tonya to seek a protective injunction, and Miranda's relationship with Tonya had been violent at times. However, the detail contained in the affidavits, the lengthy statements read to the jury by an officer of the court, and the fact that they were written by Miranda herself and not merely attributed to her make these statements highly prejudicial and of a different grade than the properly admitted evidence. Thus, we decline to find the contents of the affidavits merely cumulative of other sufficient evidence. Id. See *Willingham v. State*, 279 Ga. 886 (1) (622 SE2d 343) (2005). Compare *Stovall v. State*, 287 Ga. 415 (3) (696 SE2d 633) (2010); *Gay v. State*, 279 Ga. 180 (2) (611 SE2d 31) (2005).

Nor can we characterize the non-offending evidence against Tonya as overwhelming or so compelling as to satisfy this Court that Judge Palomino's testimony did not contribute to Tonya's verdict. Therefore, this confrontation clause violation was not harmless as to Tonya, and she is entitled to a new trial.

(b) As for Jabaris, "admission of evidence in violation of *Crawford* will be deemed harmless if there is no reasonable possibility that it contributed to a guilty verdict." *Richard v. State*, 281 Ga. 401, 404 (1) (637 SE2d 406) (2006). Judge Palomino's improperly admitted testimony referred only to Tonya and did not implicate Jabaris. *Crawford*, supra, 541 U. S. at 51. Furthermore, the evidence of Jabaris's direct involvement as a principle to the crimes was overwhelming, including admissions of his own participation to the police and to his cousin, along with extensive physical evidence tying him to the crimes.[4] Under the circumstances, we discern no reasonable possibility that the error contributed to the guilty verdicts against

---

[4] Despite a jury instruction on parties to a crime, the evidence establishes overwhelmingly that Jabaris was a principal actor and did not merely assist or advise his mother to commit the crime.

Jabaris. Accordingly, we hold that admission of this testimony was harmless beyond a reasonable doubt as to him. *Stovall*, supra at 418 (3); *Brown*, supra at 407 (3).

3. Next, appellants contend the trial court erred in overruling their objections on hearsay grounds to the testimony of Josette Skeens, Miranda's life-long friend and confidante who described Miranda's account of the fight with Tonya at the nightclub in January 2005 and Miranda's call for help. These statements by Miranda were made to a friend (not an agent of law enforcement) in seeking help with an ongoing emergency and preventing immediate harm to herself. They were not made for the purpose of "establishing evidentiary facts or 'bearing testimony' against [Tonya]." *Pitts*, supra at 290. Nor were they made with "the involvement of government officers in the production of testimonial evidence." *Crawford*, supra, 541 U. S. at 53. See also *Hester v. State*, 283 Ga. 367 (4) (659 SE2d 600) (2008). Therefore, the statements were nontestimonial in nature. See *Pitts*, supra.

"Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law." *Crawford*, supra, 541 U. S. at 68. Under Georgia law, there are

> three basic requirements for admission of hearsay under the necessity exception: (1) the declarant is unavailable, (2) the declarant's statement is relevant to a material fact and more probative on that material fact than other evidence that may be procured and offered, and (3) the statement exhibits particularized guarantees of trustworthiness.

*Evans v. State*, 288 Ga. 571, 572 (2) (707 SE2d 353) (2011). The hearsay statements at issue are of a similar nature to those which were properly admitted in *Jackson v. State*, 284 Ga. 826 (672 SE2d 640) (2009).

> [The victim's] out-of-court statements . . . were necessary because [s]he was deceased. Moreover, there are guarantees of trustworthiness since [the victim] made the statements to [her lifelong friend], whom [s]he was close to, confided in, and trusted. The statements showed the relationship between [the victim] and [appellant], and were also probative on the issues of motive and intent.

(Citations omitted.) Id. at 827. Accordingly, we find no abuse of the trial court's discretion in admitting Miranda's statements to her close friend under the necessity exception to the hearsay rule.

4. Next, appellants contend that the trial court erred in denying their motions for mistrial after Josette Skeens testified that she had heard from her ex-husband's mother that appellants had killed Miranda. Both appellants objected to this statement as impermissible hearsay, and the trial court sustained the objection. The trial court also gave a cautionary instruction for the jury to disregard Skeens's statement because it was unreliable hearsay. The trial court denied counsel's subsequent motions for mistrial, ruling that the curative instruction was sufficient.

Whether a trial court grants a defendant's motion for mistrial or uses a curative jury instruction to correct improper evidence that comes before a jury is a matter of judicial discretion. *Usher v. State*, 259 Ga. 835 (2) (388 SE2d 686) (1990). We find no abuse of that discretion here.

5. Any claim that the court erred in its instruction on venue was not preserved for review. The 2007 amendment to OCGA § 17-8-58 (a) was applicable to this 2008 trial. Under that statute, a party challenging a portion of the jury instruction must specifically object to the charge and state the grounds for such objection. Since there was no such objection at trial, appellate review was precluded "unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties." OCGA § 17-8-58 (b). Plain error was not alleged, nor do we find any.[5]

## Case No. S11A0752 (Tonya Miller)

6. Tonya's remaining enumerations of error are not likely to recur on retrial and will not be considered.

## Case No. S11A0914 (Jabaris Miller)

7. Jabaris asserts that Judge Palomino's testimony constituted inadmissible hearsay and cannot be considered in evaluating the sufficiency of the evidence against him. As noted above, there was no reference to Jabaris in Miranda's petitions. Thus, even assuming arguendo that the contents of the petitions constitute inadmissible hearsay, Jabaris cannot show that he was harmed by the improper evidence. See *Glenn v. State*, 288 Ga. 462 (3) (704 SE2d 794) (2010) (appellant must establish harm for the inadmissible hearsay to constitute reversible error).

8. Jabaris also asserts that the trial court's instruction on the law of arson in the first degree failed to state all the essential

---

[5] The charge given tracks the language of OCGA § 17-2-2 (h) and has been approved in *Napier v. State*, 276 Ga. 769 (2) (583 SE2d 825) (2003).

elements of that crime. The jury instructions began with a reading of the indictment. The jury was informed that Count 4 charged that appellants

> did unlawfully, by means of fire, knowingly and intentionally damage a 2000 Nissan truck belonging to Cheryl Miranda, without Cheryl Miranda's consent, during the commission of a felony, to wit, concealing death of another.

In its charge on arson in the first degree, the trial court instructed that the crime is committed "when, by means of fire or explosive, [a person] knowingly damages any vehicles of another without said owner's consent." Jabaris contends that the failure to include "during the commission of a felony, to wit, concealing the death of another" in the jury charge was error.[6]

This Court has held that a deviation from the indictment to the jury charge is not error where the trial court read the indictment in full to the jury and charged the jury that the State must prove each element of the crime as charged beyond a reasonable doubt. *Reed v. State*, 285 Ga. 64, 65 (4) (673 SE2d 246) (2009). As in *Reed*, supra, we find "no reasonable probability that the jury could have convicted [appellant] based on the trial court's instructional deviation from the language of the indictment." Id. at 65. Thus, there was no error.

9. The claim that the court erred in its instruction on aggravated assault is moot inasmuch as the crimes of aggravated assault and felony murder while in the commission of an aggravated assault were either merged into the malice murder conviction or vacated by operation of law under *Malcolm*, supra.

10. Finally, Jabaris purports to adopt by reference each and every enumeration of error and argument in Tonya's appellate brief. Pretermitting whether such adoption by reference is permitted, each of his co-defendant's enumerated errors are without merit with respect to Jabaris. See *Burgan v. State*, 258 Ga. 512 (10) (371 SE2d 854) (1988).

*Judgment reversed in Case No. S11A0752. Judgment affirmed in Case No. S11A0914. All the Justices concur.*

DECIDED OCTOBER 17, 2011.

*Jimmonique R. S. Rodgers*, for appellant (case no. S11A0752).
*Cromwell & Hibbert, Henry A. Hibbert*, for appellant (case no. S11A0914).

---

[6] The jury was charged on the underlying felony of concealing the death of another and convicted Jabaris of that crime.

*Paul L. Howard, Jr., District Attorney, Paige R. Whitaker, Lenny I. Krick, Marc A. Mallon, Clinton K. Rucker, Assistant District Attorneys, Samuel S. Olens, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher R. Johnson, Assistant Attorney General,* for appellee.