302 Ga. 121
FINAL COPY

S17A1145.  NEELY v. THE STATE.

Boggs, Justice.

A jury found Truseno Al Neely guilty of malice murder and possession of a firearm during the commission of a felony in the shooting death of Shelton Lee Brooks.[1] His amended motion for new trial was denied, and he appeals, asserting insufficiency of the evidence and ineffective assistance of counsel. For the reasons that follow, we affirm.

Construed to support the jury's verdict, the evidence shows that Neely, who lived in Florida, was visiting his aunt in Quitman, Georgia. On November

---

[1] The crime occurred on November 5, 2011. On October 3, 2012, a Brooks County grand jury indicted Neely for malice murder and possession of a firearm during the commission of a felony. He was tried before a jury June 25-26, 2013. The jury found Neely guilty on both counts, and he was sentenced to life imprisonment without the possibility of parole for murder and five years for the firearms charge. Neely's motion for new trial was filed on July 5, 2013, amended on August 26, 2014, and denied on September 29, 2014. His notice of appeal was filed on October 9, 2014, and the case was docketed in this Court for the April 2017 term. The case was submitted for decision on the briefs.

4, 2011, Kevin Fountain ("Fountain"), Neely's co-defendant,[2] met Neely at his aunt's house and they drove back and forth to Valdosta several times. Fountain was wearing all black clothes, and Neely was wearing a camouflage jacket. Neely's aunt identified the camouflage jacket taken by police from her house as Neely's.

Fountain testified that he and Neely stopped at a convenience store, where they saw Brooks. Videotape from the convenience store showed all three individuals; Fountain was dressed in black and Neely was wearing a camouflage jacket. Brooks asked Fountain for a ride home; in exchange for the ride, Brooks promised to give them marijuana.

Once they arrived at Brooks' apartment, Brooks said he did not have any marijuana and would "have to call someone to bring it." Neely became angry and struck Brooks multiple times in the face, knocked him to the floor, and kicked him in the face. Fountain testified that he attempted to leave, but Neely threatened him with a gun. At Neely's insistence, Fountain helped him search the apartment for marijuana but could not find any. Neely then shot Brooks in

---

[2]At trial, which occurred in June 2013, Fountain entered a plea to voluntary manslaughter and agreed to testify against Neely.

the head. Neely and Fountain left the apartment, but Neely sent Fountain back into the apartment for a sock that had come off his hand; afterward, they returned to his aunt's house.

The medical examiner testified that Brooks' injuries were consistent with having been struck multiple times about both sides of the head and face at least 15 minutes before his death, a blunt force injury where he was struck with the muzzle of a gun, and a single contact gunshot wound that caused his death.

Brooks' next-door neighbor heard "a bunch of fighting" in Brooks' apartment, but never heard a gunshot. She kept a lookout to see who would leave Brooks' apartment, and saw two males — one in a camouflage jacket holding a gun, and the other "wearing all black." She saw the man dressed in black go back up to the apartment, then return. Both men got into "a dark blue or black Honda Prelude with a scoop on the back," backed out with the lights off, and drove away.[3] At trial, she identified both Fountain and Neely as the individuals she saw leaving the apartment. The police investigation led to Fountain and then to Neely, who was discovered hiding in the back of a car.

---

[3] A witness from Florida testified that he had loaned the car to Neely after Neely told him he wanted to visit his sick grandmother.

Neely was arrested and agreed to talk with investigators. In his interview, Neely denied meeting Brooks or knowing who he was, denied that he went to the apartments where Brooks lived, and claimed that he and Fountain went back and forth between Quitman and Valdosta several times that evening before he went to see his girlfriend in Tallahassee early the next morning.

Neely took the stand and testified in his own defense. He denied knowing Brooks, but said Brooks offered to sell marijuana to him, and that Fountain insisted that they go to Brooks' place to complete the transaction. He claimed that Fountain went upstairs while he stayed in the car, and that when he did go upstairs Fountain told him to go back to the car, so he never went into Brooks' apartment. He also testified that Fountain had a .45 caliber pistol. He admitted that he had lied to law enforcement about his whereabouts at the time of the murder.

1. Neely argues that the evidence was insufficient to support his convictions, because the State's case was "completely circumstantial" and did not exclude every other reasonable hypothesis except that of Neely's guilt. The record, however, does not support this claim.

[U]nder OCGA § 24-14-6, questions as to the reasonableness of

4

hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

(Citation and punctuation omitted.) Smiley v. State, 300 Ga. 582, 586 (1) (797 SE2d 472) (2017). Here, an eyewitness identified Neely as the man leaving Brooks' apartment wearing a camouflage jacket and with a gun in his hand. Video from the convenience store at the time Neely and Fountain encountered Brooks showed Neely wearing a camouflage jacket, and the same or a similar jacket was later given to police by his aunt. And Neely's own testimony placed him at the scene, while he initially denied having been present and attempted to hide from police. Questions of witness credibility are for the jury to decide. Lewis v. State, 298 Ga. 889, 890 (1) (785 SE2d 520) (2016). The evidence was sufficient to support Neely's convictions under Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Neely claims that his trial counsel was ineffective in failing to call a number of witnesses; he contends they would have testified that Fountain was seen with a firearm around the time of the murder.

To prevail on a claim of ineffective assistance, Neely must prove both that

5

the performance of his lawyer was deficient and that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, he must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. Id. at 687-688 (III) (A). See also Kimmelman v. Morrison, 477 U. S. 365, 381 (II) (C) (106 SCt 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Neely must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, 466 U. S. at 694 (III) (B). See also Williams v. Taylor, 529 U. S. 362, 391 (III) (120 SCt 1495, 146 LE2d 389) (2000). This burden is a heavy one, see Kimmelman, 477 U. S. at 382 (II) (C), and Neely has failed to meet it.

Neely argues that "numerous witnesses" could have testified on his behalf that Fountain was seen with a gun "in close proximity of time to the murder." His appellate counsel examined trial counsel at length regarding various

individuals who were identified as witnesses by the State or were interviewed by law enforcement during the investigation, as shown by summaries of the interviews in the record. According to these summaries, some individuals stated that Fountain displayed a pistol before or after the time of the murder. But only one potential witness, Willie Johnson, testified at the hearing on the motion for new trial.

> When a defendant claims that trial counsel performed deficiently in failing to call a witness for trial, the defendant may not rely on hearsay and speculation, including prior unsworn statements, to prove the prejudice prong of his ineffectiveness claim. Rather, the defendant must introduce either testimony from the uncalled witness or a legally recognized substitute for his testimony, such as an affidavit.

(Citations and punctuation omitted.) Manriquez v. State, 285 Ga. 880, 881 (2) (684 SE2d 650) (2009). Johnson testified that Fountain came into his house the morning of the murder or the day after and told him, "I got something you might want," and showed him a gun. Johnson could describe the gun only as "a black gun," a handgun, and did not know what kind, size, or caliber it was.

Neely's trial counsel testified at the hearing on Neely's motion for new trial that Neely sent him a list of witnesses, but that all those individuals were listed on the State's indictment. Counsel spoke to the district attorney, who did

7

not plan to subpoena all the witnesses because some of them were not relevant to Neely's part of the case. Other individuals appeared in reports prepared by GBI agents, but counsel noted, "As you well know, just because they interview a witness, doesn't mean a witness knows anything about the case." Counsel testified that, as Neely was from Florida and had not been in the area long, he could not have known the witnesses, that any knowledge they had would not have helped Neely, and that he was "not prone to calling witnesses just to have people on the stand." Trial counsel believed that even if Fountain may have had a gun the day before, it was not relevant to his trial strategy. With respect to Johnson, trial counsel testified that if he had believed that his testimony would have helped Neely's case, he would have called him.

Moreover, trial counsel presented other evidence on Neely's behalf to support his theory that Fountain, not Neely, committed the murder, and that Fountain had possession not only of "a black gun" of unknown caliber as testified to by Johnson, but the murder weapon itself. Trial counsel called Fountain's cellmate, who testified that Fountain confessed to him in jail that he had killed Brooks and could not sleep because "I keep seeing me killing that man." On cross-examination, trial counsel confronted Fountain with his

statement to a GBI agent that he had lied about Neely's involvement, and elicited the admission from Fountain that he "had handled this gun for a week" and had a live pistol round matching the murder weapon in his pocket when he was arrested.

"A decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances." Shockley v. State, 297 Ga. 661, 666 (3) (777 SE2d 245) (2015). Here, trial counsel offered a "considered, informed, and reasonable" explanation for the decision not to call witnesses, and "this Court cannot say that this decision was outside the range of reasonable professional assistance." Id. Given the requirement that our scrutiny of trial counsel's performance "must be highly deferential," State v. Worsley, 293 Ga. 315, 323 (3) (745 SE2d 617) (2013), we cannot conclude that Neely has met his heavy burden of demonstrating ineffective assistance of counsel.

Judgment affirmed. All the Justices concur.

Decided September 13, 2017.

Murder. Brooks Superior Court. Before Judge Hardy.

Bennett & Connell, Matthew B. Bennett, for appellant.

Bradfield M. Shealy, District Attorney, J. David Miller, Jessica W. Clark, Michelle T. Harrison, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.