303 Ga. 1
FINAL COPY

S17A1578.  MILLER v. THE STATE.

BENHAM, Justice.

Appellant Tonya Miller appeals her convictions for malice murder and concealing the death of another relating to the death of Cheryl Miranda.[1]

1.    Appellant contends the evidence was too circumstantial to sufficiently establish her guilt.  Viewed in a light most favorable to upholding the jury's verdicts, the record shows appellant and Miranda were romantically involved and lived together for a time in Tampa, Florida.  The couple experienced problems stemming from appellant's jealousy.  In May 2004, Miranda obtained a temporary protective order against appellant. When the injunction was served on May 11, 2004, a law enforcement officer

---

[1] The crimes occurred in 2005.  Appellant was originally tried and convicted in 2008; however, this Court reversed her convictions in 2011.  See Miller v. State, 289 Ga. 854 (2) (a) (717 SE2d 179) (2011).  From February 4-8, 2013, appellant was retried on counts of malice murder, felony murder, aggravated assault, and concealing the death of another.  The jury returned verdicts of guilty on all charges and, on February 13, 2013, the trial court sentenced appellant to life in prison for malice murder and ten years to serve consecutively for concealing the death of another.  The felony murder count was vacated as a matter of law, and the aggravated assault count merged into the conviction for malice murder.  Appellant moved for a new trial on March 6, 2013, and amended the motion on September 15, 2014.  On September 30, 2014, the trial court held a hearing on the motion as amended and denied it the same day.  Appellant filed a notice of appeal on October 20, 2014.  Upon receipt of the record, the appeal was docketed to the August 2017 term of this Court and submitted for a decision to be made on the briefs.

forced appellant to leave Miranda's residence. On May 13, 2004, appellant was arrested for violating the protective order and, on May 26, 2004, Miranda caused a trespassing warning to be served against appellant. The nature of the relationship appeared to be characterized by periods of disagreement followed by periods of reconciliation or amity. Josette Skeens, who had been a close friend of Miranda's for 30 years and referred to Miranda as her "aunt," testified she drove Miranda home from a club in January 2005 after Miranda called her for a ride. When Skeens picked Miranda up at the club, she saw that Miranda had a busted lip, a missing tooth, and broken eyeglasses. Miranda told Skeens she "had just got in a fight with Tonya." Skeens said she had never met appellant, but had seen her in passing on one occasion and understood appellant to be Miranda's girlfriend.

In mid-to-late January 2005, appellant moved to Atlanta. Her relatives testified appellant was moving to Atlanta to attend truck driving school and to be close to family so that she could adopt a child. Miranda helped facilitate the move by driving appellant to Valdosta where appellant met her niece Erica Hammond, who drove appellant the rest of the way to Atlanta. Appellant moved in with her sister, Montina Miller, and her niece, Nakita

Monfort. Sometime after February 19, 2005, appellant went back to Florida and was not seen again by Monfort or Montina until March 1, 2005, when appellant and her son Jabaris Miller[2] showed up at their apartment. Appellant told her relatives she, Jabaris, and a woman had traveled together in a white truck, which was parked in front of the apartment building. The truck stayed parked in front of the apartment for several days, but Monfort noticed that Jabaris and the truck were gone in the early morning hours of March 4, 2005.

Skeens testified she last heard from Miranda on February 27, 2005, when Miranda called Skeens to say she would not be coming over to Skeens's house to watch an awards show as the two had previously planned. Cell phone records showed Miranda's cell phone traveling on February 28 from Tampa, Florida to Forsyth County, Georgia. The cell phone records, as well as witness testimony, showed that Jabaris used Miranda's cell phone to make several phone calls to various family members that day. Erica Hammond testified that she believed she heard appellant's voice in the background of a voicemail message Jabaris left for her while using Miranda's cell phone.

---

[2] Jabaris was tried and convicted in the first trial, and his convictions have been affirmed. Miller v. State, supra, 289 Ga. at 858-861.

3

In the early morning hours of March 4, 2005, the police found Miranda's white truck engulfed in flames. Fire investigators determined the fire was intentionally set with lighter fluid. The burn site was close to the apartment building where appellant and Jabaris were staying with Montina and Monfort. Upon extinguishing the fire, police found Miranda's burned body face down in the bed of the truck. Once Miranda's body was identified and Miranda was confirmed as the owner of the truck, the police were able to cultivate leads in the case primarily through her cell phone records as described above.

Miranda's body was bound with a ligature around the wrists and had a belt around the neck. The medical examiner testified Miranda suffered blunt force injuries to her head, including the fracturing of her skull; four sharp force injuries to the chin and neck, including the severing of her left jugular vein; and injuries indicating she had been strangled with the belt found around her neck. The autopsy revealed Miranda was alive when she received these injuries, but was deceased at the time her body was burned. The medical examiner determined the cause of death was blunt force and sharp force injuries to the head and neck; but she testified that the sharp force

4

injury to the left jugular vein was sufficient in itself to cause Miranda's death.

Montina saw news of the truck fire, as well as the discovery of a body, on television and recognized the white truck. She confronted appellant about it, and appellant told her, in so many words, to mind her own business. At that point, Montina told appellant and Jabaris to leave the apartment. The pair then went to stay with appellant's other sister, Tamala Givan. On March 22, 2005, the police executed a search warrant at Givan's house. In appellant's bags of belongings, they found Miranda's pawn shop receipts from February 17, 19 and 21, 2005; personal documents belonging to Miranda; and Miranda's credit cards. They also found other property belonging to Miranda, including a decorative knife/letter opener and a set of nunchaku, which could have been used to inflict the fatal stab wounds and blunt force head wounds, respectively, on Miranda.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. In this case, the circumstantial evidence was sufficient to show that appellant either directly committed the crimes or was a party to the

5

crimes for which the jury returned verdicts of guilty. There was evidence of prior difficulties between appellant and the victim, including evidence that appellant had acted violently against Miranda a few months before her body was found; evidence that days before Miranda's body was found, appellant's son used Miranda's cell phone to call their relatives; evidence that one of these relatives, who received a voice message from Jabaris while he was using Miranda's cell phone, heard appellant's voice in the background; evidence that appellant and Jabaris used Miranda's truck to travel from Tampa to Atlanta; evidence that Miranda's truck was parked outside the apartment complex where appellant and Jabaris were staying with relatives; evidence that the relatives recognized the truck when the fire was reported on the news; and evidence that the police found Miranda's personal items, including items which could have been used to inflict the fatal injuries to her body, inside appellant's bags. The jury was authorized to find that this evidence, though circumstantial, was sufficient to exclude every other reasonable hypothesis save that of guilt. See Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979); Neely v. State, 302 Ga. 121 (1) (805 SE2d 18) (2017).

6

2. Appellant complains the trial court erred when it admitted Skeens's testimony that Miranda told her she had a fight with "Tonya" in a club on the ground the statement is hearsay that is not admissible under the residual hearsay exception set forth in OCGA § 24-8-807.[3] At the trial at issue in this appeal, the prosecutor asked Skeens as follows: "Did you ever have any conversations with Ms. Miranda regarding whether she and Tonya ever got into a fight?" Before Skeens responded, defense counsel objected on the ground that the State had failed to establish the proper foundation for an exception to the hearsay rule. The trial court overruled this objection without giving any indication of its reasoning. The prosecutor then asked Skeens to tell the jury what she knew about appellant and Miranda getting into a fight. In her response to this question, Skeens testified that Miranda told her she had been in a fight with "Tonya." Defense counsel did not object to this response, or the question that elicited the response, and did not object to any other portion of the prosecutor's direct examination of Skeens.

---

[3] We upheld the admission of this same evidence at appellant's prior trial on the ground that it was non-testimonial hearsay properly admitted into evidence under the necessity exception to the hearsay rule under Georgia's old Evidence Code. See Miller v. State, supra, 289 Ga. at 859. Since the instant trial occurred after January 1, 2013, the admission of the evidence must be examined under the new Evidence Code.

It is a close call as to whether appellant postured a specific objection based on OCGA § 24-8-807; however, for the purposes of the appeal, we will presume that defense counsel's general foundation/hearsay objection preserved the matter for our direct review.[4]  To that end, we will disturb the lower court's ruling only if there is an abuse of discretion.  See Tanner v. State, 301 Ga. 852 (1) (804 SE2d 377) (2017).

OCGA § 24-8-807 provides in pertinent part:

A statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that:
(1) The statement is offered as evidence of a material fact;
(2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
(3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

. . .

The residual exception to hearsay is "to be used very rarely and only in exceptional circumstances, and only when there exists certain exceptional guarantees of trustworthiness and high degrees of probativeness and necessity."  Tanner v. State, supra, 301 Ga. at 855.  See also Smart v. State, 299 Ga. 414 (3) (788 SE2d 442) (2016).  Whether there are exceptional

---

[4] Therefore, we are not invoking plain error review as provided in OCGA § 24-1-104 (d).

guarantees of trustworthiness is a determination that focuses on the *declarant* and the circumstances under which the declarant made the statement to the witness. See <u>Rivers v. United States</u>, 777 F3d 1306 (II) (A) (11th Cir. 2015) ("The fundamental question . . . is not the trustworthiness of the witness reciting the statements in court, but of the declarant who originally made the statements.").[5]    In this case, Skeens testified that when she went to pick Miranda up from the club, she saw that Miranda had a busted lip, a missing tooth, and broken eyeglasses.    Miranda explained her condition to Skeens, whom she had known for three decades and with whom she had maintained a close relationship, by stating she was in a fight with "Tonya."  We cannot say that such a statement made to a close personal friend in these circumstances, in particular as it relates to incidents of domestic violence, "do[es] not, in fact, bear an increased level of trustworthiness." <u>Smart v. State</u>, supra, 299 Ga. at 422. In addition, the statement at issue lends itself to being highly probative of motive for the crimes at bar.  Indeed, the evidence was more probative of the relationship troubles between appellant and Miranda than

---

[5] Thus, appellant's arguments that the statement lacked guarantees of trustworthiness because Skeens had never met appellant, Skeens had not seen appellant on the date of the incident, and Skeens had only spoken briefly to Miranda about the incident on the night in question, fall outside the required focus on the declarant.  Id. at 1314 ("[T]he language of Rule 807 itself makes clear that when it comes to trustworthiness, its primary concern is that of the declarant.").

9

other evidence in the case because Skeens could describe for the jury the injuries she saw on Miranda at the time the statement was made. The admission of the statement otherwise was not contrary to the rules of evidence or interests of justice. Accordingly, we cannot say the trial court abused its discretion when it allowed the statement into evidence.

Judgment affirmed. All the Justices concur.

Decided February 5, 2018.

Murder. Fulton Superior Court. Before Judge Adams.

Eric J. Taylor, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.