**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**April 21, 2022**

# In the Court of Appeals of Georgia

A22A0221. PENCIEL v. THE STATE.

REESE, Judge.

A jury found John Penciel guilty of kidnapping, hijacking a motor vehicle, aggravated assault with a deadly weapon, aggravated assault, false imprisonment, terroristic threats, and possession of a firearm during the commission of a felony.[1] On appeal, Penciel argues that: (1) the evidence was insufficient to support his convictions; and (2) the trial court erred in admitting custodial statements from one of Penciel's co-defendants, in violation of the Confrontation Clause of the United

---

[1] See OCGA §§ 16-5-40 (a); 16-5-44.1 (b) (1), 16-5-21 (a) (2); 16-5-41 (a); 16-11-37 (b) (1); 16-11-106 (b) (1).

States Constitution and the rule set forth in *Bruton v. United States*.[2] For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the verdict,[3] the record shows the following. On the evening of June 27, 2016, Deborah Patrick left her house and went to the store. After she made her purchases, while getting in her truck, a group of men grabbed her, hit her in the head with guns, and forced her into an SUV. The group blindfolded Patrick and drove off with her in the back seat. The assailants told Patrick they were kidnapping her and pressed guns against her. They called Patrick's sons and demanded a large amount of money in exchange for her return. Patrick's sons called the police.

While on the phone with Patrick's sons, the group repeatedly threatened to kill Patrick. The group took Patrick to a shed and photographed her. The photograph showed Patrick with a gun to her head, and the group sent the photograph to Patrick's sons. The kidnappers also mentioned that they possessed an AK-47.

Late that night, after midnight, Penciel took his girlfriend's Dodge Magnum without her permission and drove the car to meet up with the group. Cell tower

---

[2] 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

[3] See *Bernal v. State*, 362 Ga. App. 108, 110 (1) (866 SE2d 642) (2021).

2

location data from Penciel's cell phone confirmed that he did not join the group until late that night, after the initial abduction. Penciel turned the Magnum over to another member of the group. Penciel then got into the driver's seat of a Dodge Durango. The group placed Patrick in the back seat of the Durango, and three other members of the group joined Penciel in the vehicle.

Patrick's sons developed a plan with the police to free Patrick. Patrick's sons planned to meet the kidnappers at a gas station to purportedly pay the ransom, at which time the police would instead attempt to rescue Patrick. Penciel drove the Durango to the gas station with Patrick in the back seat. When Penciel saw the police, he pulled out of the gas station, engaged in a short high-speed chase, and crashed the vehicle approximately a mile down the road.

After the crash, the kidnappers tried to flee on foot. The police captured Penciel and Terenzio McCurty at the scene, and later arrested Demetrius Sims, Joshua Fowler, Dontavis Clay, and Denard Brown. The police took Patrick to the hospital, where she received treatment for her injuries.

Sims pled guilty and testified against the other co-conspirators. He confirmed that Penciel drove the Durango with Patrick in the back seat and that Penciel led the

3

police on the chase. He also testified, however, that while in jail after their arrest, he heard Penciel keep asking "What's going on?" and that Penciel seemed "clueless[.]"

The jury found Penciel guilty of all the charges against him. The trial court denied his amended motion for new trial, and this appeal followed.

In considering a sufficiency claim, we view the evidence

in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. [W]e do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. The jury's verdict will be upheld, then, so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[4]

We review the trial court's evidentiary rulings and its denial of Penciel's motion for a mistrial for an abuse of discretion.[5] With these guiding principles in mind, we now turn to Penciel's claims of error.

---

[4] *Smith v. State*, 354 Ga. App. 882, 884 (1) (842 SE2d 305) (2020) (punctuation and footnotes omitted).

[5] See *Johnson v. State*, 348 Ga. App. 831, 833 (1) (823 SE2d 351) (2019) (evidentiary rulings); *Smith v. State*, 308 Ga. App. 190 n.3 (707 SE2d 135) (2011) (reviewing for an abuse of discretion the trial court's denial of a motion for mistrial on *Bruton* grounds).

1. Penciel argues that the evidence was insufficient to support his convictions. Specifically, he contends that the hijacking, kidnapping, and assault were already "completed" before he joined the group that night. Penciel also argues that the evidence showed that he was unaware of his co-defendants' goals or misdeeds.

"When persons associate themselves in an unlawful enterprise, any act done by any party to the conspiracy to further the unlawful enterprise is considered to be the act of all the conspirators."[6] "[O]ne who joins a conspiracy takes it as he finds it and is responsible for acts previously done in carrying out such conspiracy."[7] "While mere presence at a crime scene is alone insufficient to convict one of being a party to a crime, one's presence, companionship, and conduct before, during, and after the commission of the crime are factors, even if only circumstantial, that the jury may consider in determining whether [the] defendant participated in a conspiracy to commit the crime."[8]

---

[6] *Johnson v. State*, 299 Ga. App. 706, 708 (1) (a) (683 SE2d 659) (2009).

[7] *Brown v. State*, 177 Ga. App. 284, 288 (4) (339 SE2d 332) (1985) (citation and punctuation omitted).

[8] *Smith v. State*, 253 Ga. App. 131, 133 (1) (558 SE2d 455) (2001).

In this case, there was sufficient evidence for the jury to find that Penciel was a party to the conspiracy to kidnap and ransom Patrick. Penciel gave the car he was driving to a co-conspirator, drove the vehicle that had Patrick blindfolded in the back seat, and led the police on a high-speed chase.[9] While there was countervailing testimony from Sims that suggested Penciel was unaware of the ransom plot, in considering a sufficiency claim, we "do not re-weigh testimony, determine witness credibility, or address assertions of conflicting evidence."[10]

Thus, even though Penciel might not have been present during the initial abduction, he became responsible for those acts because he joined the conspiracy and the offenses were a natural consequence of the ransom plot.[11] Accordingly, there was sufficient evidence to convict Penciel of the offenses charged in the indictment.[12]

---

[9] See *Dixon v. State*, 277 Ga. App. 656, 659 (627 SE2d 406) (2006) (flight from the scene of the crime is circumstantial evidence of guilt).

[10] *Jones v. State*, 307 Ga. 505, 506 (1) (837 SE2d 288) (2019).

[11] See *Johnson*, 299 Ga. App. at 709 (1) (a); *Brown*, 177 Ga. App. at 288 (4).

[12] See *Johnson*, 299 Ga. App. at 709-710 (1) (a), (b), (d); see also *Middlebrooks v. State*, 241 Ga. App. 193, 195 (3) (526 SE2d 406) (1999) ("A conspiracy may be proven and a jury charge may be given on conspiracy, even though a defendant is not indicted under that theory.") (citations and punctuation omitted).

2. Penciel argues that the trial court abused its discretion in admitting certain custodial statements from co-conspirator Fowler in violation of the Confrontation Clause and the rule announced in *Bruton*. Fowler did not testify at trial, and Penciel contends that those custodial statements directly implicated him.

During his opening argument in the joint trial, Fowler's counsel asserted that Fowler was kidnapped and pistol-whipped, and thus was also a victim. To rebut this defense, the State sought to introduce testimony from GBI Special Agent Michael Oliver, who interviewed Fowler after his arrest and would testify that Fowler had told him a different story. The trial court, well aware of Confrontation Clause issues, allowed Oliver to testify but cautioned the parties that the testimony should not directly implicate any of the other co-defendants. Oliver testified that, when he interviewed Fowler, Fowler told him that he had entered the vehicle shortly before the crash in order to sell marijuana. Fowler told Oliver that three other men were in the vehicle. During cross-examination, Fowler's counsel asked whether Fowler gave a description of the driver as "an older guy[,]" but the court sustained both the State's and Penciel's objection to this question.

A defendant's right under the Confrontation Clause is violated
under *Bruton* when there is a joint trial of co-defendants and the

testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime or crimes on trial. But, *Bruton* excludes only the statement of a non-testifying co-defendant that standing alone directly inculpates the defendant. There is no *Bruton* violation when the statement on its face does not incriminate the defendant but becomes incriminating only when linked with other evidence introduced at trial.[13]

In this case, Oliver's testimony on Fowler's custodial statement did not directly inculpate Penciel. The testimony only described the occupants as male and did not identify or otherwise describe Penciel. Since the testimony "standing alone" did not incriminate Penciel, there was no *Bruton* violation.[14] Additionally, even if there was a violation of the Confrontation Clause, any error was harmless as the testimony did not implicate Penciel, and because there was overwhelming evidence that Penciel was in the vehicle.[15]

---

[13] *Battle v. State*, 301 Ga. 694, 700 (4) (804 SE2d 46) (2017) (citations and punctuation omitted).

[14] See *Thomas v. State*, 300 Ga. 433, 440 (2) (a) (3) (796 SE2d 242) (2017); *Sutton v. State*, 295 Ga. 350, 353 (3) (759 SE2d 846) (2014); *Carcamo v. State*, 348 Ga. App. 383, 388 (1) (a) (823 SE2d 68) (2019).

[15] See *Miller v. State*, 289 Ga. 854, 858 (2) (b) (717 SE2d 179) (2011) ("[The] admission of evidence in violation of *Crawford* [*v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004)] will be deemed harmless if there is no reasonable possibility that it contributed to a guilty verdict.") (citation and punctuation omitted);

*Judgment affirmed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

see also *Miller*, 289 Ga. at 858 (2) (b) (holding that the improperly admitted evidence was harmless because it did not implicate the defendant and evidence of the defendant's direct involvement was overwhelming).